[Crim. No. 6059.   Second Dist., Div. Three.   Feb. 6, 1958.]

THE PEOPLE, Respondent, v. GROVER CLEVELAND McDANIEL, Appellant.

Grover Cleveland McDaniel, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

SHINN, P. J.—Grover Cleveland McDaniel was accused by information of two offenses of forgery of a fictitious name. (Pen. Code, § 470.) The information alleged that he had suffered a previous felony conviction of violation of the Dyer Act, another conviction of burglary and had served terms of imprisonment therefor in a federal prison and a state prison in California. Defendant acted as his own counsel in the trial proceedings. He pleaded not guilty and denied the prior convictions. Trial was to the court, which found him guilty of both offenses of forgery and found the priors to be true. McDaniel made a motion for new trial, which was denied, and he was sentenced to state prison for the term prescribed by law. He appeals from the judgment and the order denying him a new trial.

The convictions of forgery were based upon evidence of the following facts: Harold Epstein was the President of Bookcases, Inc., a corporation engaged in the manufacture of furniture at its plant on South Hill Street in Los Angeles. Epstein testified that defendant was employed by the corporation sometime in January 1957 and that the employment terminated one day in the middle of February when defendant failed to show up for work. Several weeks later, Epstein was asked by officials of the Union Bank and Trust Company to come to the bank and examine two checks drawn on the account of Bookcases, Inc. One check was in the amount of $53.36 and was dated March 2d; the other was in the amount of $53.47 and was dated March 8th. Each check was signed "Harold Ayston" and was made payable to Grover McDaniel. The checks purported to be for wages earned; they bore notations in the upper lefthand corner of deductions for social security and withholding taxes. The reverse of each check bore the handwritten endorsement "Grover McDaniel 4419 S. Towne Ave."

The witness then discovered that two checks were missing from the center of the corporation's checkbook. He stated that he knew nobody by the name of Harold Ayston, that he alone had authority to sign checks on behalf of Bookcases, Inc., and that he had not given anyone permission to sign company checks.

The $53.36 check was presented for cashing on the afternoon of March 2d to Eleanor Melendez, an employe of Handy Payments at an address on South Broadway in Los Angeles. Mrs. Melendez testified that she cashed the check and identified her initials on the face of the instrument. The check was handed to her by a colored man, but she could not identify him as defendant. The other check was approved for cashing on March 8th by Samuel Brownfield at his market on Vermont Avenue in Los Angeles. He had no recollection of the person who presented the check to him.

L. M. Deinert, a police officer for the city of Los Angeles, was one of the investigating officers in the case. While defendant was in custody, Deinert requested him to write his name on a sheet of white paper, together with other words and figures that appeared on the two checks. McDaniel complied with the officer's request; he signed his name "Grover C. McDaniel."

K. L. Woodward, an examiner of questioned documents for the Los Angeles Police Department, qualified as an expert witness with reference to the analysis and comparison of handwriting. Woodward testified that he had made a comparison of the endorsements appearing on the reverse of the two checks with defendant's signature on the sheet of white paper. It was his opinion that the person whose signature appeared on the paper was the same person who had placed the endorsements on the checks.

The People introduced in evidence certified copies of judgments of the United States District Court for the District of New Mexico and of the Superior Court of the State of California for Los Angeles County, together with signature cards and fingerprint exemplars. Donn Kelso, a qualified fingerprint expert with the Los Angeles Police Department, testified that he had made a comparison of the exemplars with fingerprint impressions of defendant taken while McDaniel was in custody. It was his opinion that the two sets of impressions were those of the same person. Woodward also stated that he had made a comparison of the handwriting on the cards with the signature obtained from defendant. He gave his opinion that they were signed by the same person.

Officer Deinert was called as a witness by defendant. He testified that he had a conversation with McDaniel after the latter's arrest. Defendant told him that he had never seen the checks, that he did not take them, and that he did not live at 4419 South Towne Avenue but had used the number as a mailing address in the past. Fred D. Brenner, an official of the State Department of Employment, identified his signature on a letter to McDaniel stating that according to the department's records defendant worked for Bookcases, Inc., from January 21st until February 7, 1957.

Defendant, testifying in his own behalf, denied taking the checks from the company checkbook and denied endorsing and cashing them. The endorsements on the checks were not in his handwriting. He quit work on February 7th and returned to pick up his paycheck the next day. He left Los Angeles in the middle of February and went to Dallas, Texas, where he remained until he was taken into custody on May 31st on the forgery charges. He "freely and voluntarily returned here when the officer came, to face this charge." He never lived at 4419 South Towne Avenue but had used it as a mailing address prior to October 1956. On cross-examination, he admitted signing his name on the sheet of white paper at the officer's request. He also admitted suffering the two prior convictions and having served terms of imprisonment therefor.

Defendant has filed several briefs in support of his appeal. The briefs are adequate as a presentation of all the points that could be urged in his behalf. We have made a thorough examination of the record and have discovered no insufficiency of the evidence and no error at the trial.

Defendant argues the following points in his briefs: (1) He was not lawfully apprehended in Texas; (2) he did not waive a jury trial; (3) he was not present during "proceedings for change of venue"; (4) the court should have instructed the clerk to read the information; (5) he should have been granted a continuance in order to secure the presence of his witnesses; (6) the court should have taken a recess in order to examine the effect of certain statutes; (7) the court erred in permitting the testimony of Epstein at the preliminary hearing to be read in evidence at the trial; (8) the court erred in failing to require a handwriting expert who testified at the preliminary hearing to appear at the trial; (9) impressions of his fingerprints were taken in violation of his constitutional rights; (10) the court "injected nationality" into

the record; (11) the evidence was insufficient to support the convictions of forgery; (12) the court erred in permitting proof of his prior convictions for the reason that the statutes providing for increased punishment of recidivists are unconstitutional.

With respect to the first point, defendant asserts in his brief that the officers who arrested him in Dallas acted without authority, that he was not formally extradited from Texas and that he did not waive extradition. These statements are contradicted by his testimony at the trial. McDaniel then stated that he "freely and voluntarily returned here when the officer came, to face this charge."

The second point is that McDaniel did not expressly waive a jury trial. When the cause was called in Department 40 of the Superior Court, the following proceedings occurred: "THE COURT: Do you want a Court or jury trial? THE DEFENDANT: I'll accept a Court trial. THE COURT: You're satisfied to have the Court determine this matter without a jury, are you? THE DEFENDANT: I will. THE COURT: And will you join in the waiver, Mr. Busch? MR. BUSCH: Yes, your Honor, we join. THE COURT: On behalf of the People? MR. BUSCH: Yes." The matter was then transferred to another department for trial, whereupon after the commencement of testimony defendant asserted that "He never asked me did I waive right to a jury trial. I said Court trial would be sufficient. I never waived the right to a jury trial." and objected to being tried by the court. After hearing the shorthand reporter assigned to Department 40 read his notes of the colloquy we have just set forth, the court overruled McDaniel's objection.

Defendant argues that he cannot be deemed to have consented to a court trial for the reason that he did not expressly say that he waived trial by a jury. The argument is without merit. The effectiveness of a jury waiver does not depend upon the use of any particular form of words by an accused; he need only use language that, in its ordinary meaning, expresses an intention to submit the matter to the court sitting without a jury. (*People* v. *Beckworth,* ·151 Cal.App.2d 842 [312 P.2d 270].) In our opinion, defendant's statements were clearly sufficient as an expression of such an intention and they constituted a valid waiver of a jury trial.

Under the third point, defendant claims that he was not present during certain "proceedings for change of venue,"

to wit, the transfer of his case from Department 40 of the Superior Court to Department 47 and then to Department 42. His argument rests upon a misconception of the meaning of "venue." Venue in criminal actions refers to the county in which a prosecution is brought for trial. (Pen. Code, § 1033 et seq.) A transfer to another department of the superior court is not a transfer of the jurisdiction of the cause, which remains at all times in the superior court as a single entity. (*People* v. *Sears,* 138 Cal.App.2d 773, 794 [292 P.2d 663].) Furthermore, the record discloses that defendant was personally present in court at all stages of the proceedings.

There is likewise no merit to the argument that the court should have instructed the clerk to read the information, as urged under the fourth point. The requirement is applicable only to jury trials (Pen. Code, § 1093, subd. 1), and it cannot be doubted that the trier of fact was cognizant of the charges against defendant and the issues raised by his not guilty plea and his denial of the prior convictions.

During the direct examination of Mr. Woodward, McDaniel interrupted the proceedings to make a motion for a continuance upon the ground that he had subpoenaed certain witnesses who were not present in the courtroom. The court stated that it would order the arrest of any defense witness who had failed to appear in response to a subpoena, but denied defendant's motion, taking note that upon being asked that morning in Department 40 whether he was ready for trial McDaniel replied in the affirmative.

As to the fifth point, there is no merit to the argument that denial of a continuance constituted an abuse of discretion. If defendant desired a postponement of the trial on account of the absence of witnesses necessary to his defense, it was incumbent upon him to disclose to the court the names of those witnesses, which he did not do; in the absence of such disclosure the court properly denied his motion for a continuance. (*People* v. *Franklin,* 41 Cal.App.2d 669, 670 [107 P.2d 500].) It cannot be argued that McDaniel was deprived of an opportunity to present any evidence he deemed material to his defense. After Officer Deinert and Mr. Brenner had testified in his behalf, the court asked defendant whether he wished to offer any other evidence and McDaniel replied: "That is all the evidence I have. When I was employed and when I was terminated." He then took the stand and denied his guilt of the forgeries.

As we have already said, Mr. Brenner read into the record

a copy of his letter to defendant, giving the dates of defendant's employment with Bookcases, Inc. Upon being asked by McDaniel whether the company was the source of that information, Brenner declined to answer the question, stating that disclosure of the records of his department would be in violation of certain sections of the Unemployment Insurance Code. The sixth point is that the court should have declared a recess for the purpose of examining those sections. A sufficient answer to this contention is furnished by the following statement of defendant at the trial: ''If they can't expose it, there's no need to go any further with it. As long as the letter states when I was employed and when I was terminated. . . . That is all I wanted to get in.''

With respect to the seventh point, the court properly allowed the testimony of Mr. Epstein given at the preliminary hearing to be read in evidence at the trial. Penal Code, section 686, provides that the deposition of a witness at the preliminary hearing may be read at the trial upon it being satisfactorily shown that the witness cannot with due diligence be found within the state. Two investigators for the district attorney's office testified that they made inquiries as to Epstein's whereabouts and ascertained that he was in Dallas, Texas; they sent a telegram to Epstein at an address in Dallas furnished by his family and received in reply a telegram from Epstein stating that he would be unable to appear at the trial. Photostatic copies of the telegrams were received in evidence. If upon the exercise of a reasonable discretion the court determines the fact to be that the witness is outside this state, its order allowing the testimony to be read will not be disturbed on appeal. (*People* v. *Harris,* 87 Cal. App.2d 818, 824 [198 P.2d 60].) We cannot say that as a matter of law there was an insufficient showing of Epstein's absence from the jurisdiction.

McDaniel's eighth point is that the court erred in failing to require the appearance of a Mr. Sloane, a police handwriting expert who testified against him at the preliminary hearing. After the prosecutor had concluded his examination of Woodward, defendant was asked whether he wished to cross-examine the witness. This McDaniel declined to do, stating that he desired to examine Sloane. It appears that Sloane was then on vacation, that Woodward and Sloane were coworkers, and that both men had made a comparison of the writing on the checks with defendant's signature on the sheet of white paper.

McDaniel says in his brief that Sloane had stated his opinion at the preliminary hearing that the handwriting on the face of the two checks was not that of defendant. In this connection, he argues that the absence of Sloane at the trial deprived him of the right to bring out that fact. The argument cannot be maintained. ▆ The prosecution is not required to call any particular witness or witnesses so long as it fairly presents the material evidence relating to the charge for which the accused is on trial. (*People* v. *Tuthill,* 31 Cal.2d 92, 98 [187 P.2d 16].) ▆ The fact, if it be a fact, that McDaniel did not execute the face of the instruments could have been developed upon the cross-examination of Woodward, and if defendant failed to avail himself of the opportunity to cross-examine the witness, he will not be heard to complain on the appeal.

▆ There is likewise no merit to McDaniel's ninth point, which is that the introduction in evidence of fingerprint impressions taken without his consent was an infringement of his constitutional privilege against self-incrimination. Mr. Kelso admitted that he obtained the impressions over the objections of defendant. However, it is well settled that the privilege against self-incrimination relates primarily to testimonial compulsion, and does not extend to the taking of the fingerprints of an accused. (*People* v. *Haeussler,* 41 Cal. 2d 252, 257 [260 P.2d 8], and cases cited.)

Defendant's contention that the court "injected nationality" into the record rests upon Mrs. Melendez' statement that the check she cashed was presented to her by a colored man. The point is too trivial to require discussion.

▆ The next point to be considered is the insufficiency of the evidence to support the two convictions of forgery. In this connection, defendant argues that there was no evidence that he was the person who presented the checks to be cashed and that the identification of his handwriting on the endorsements rests upon the "unscientific" opinion of Mr. Woodward. The argument is without merit.

The People were required to prove that defendant knowingly made, uttered, published or passed two fictitious checks for the payment of money, with an intent to defraud some other person. (Pen. Code, § 470.) There was evidence of all the elements of each offense. That the checks were fictitious cannot be doubted, for they were drawn upon the account of Bookcases, Inc., and bore the signature of "Harold Ayston" whom Epstein, the president of the company, stated

to be a fictitious person. There was no evidence that defendant placed the name of Ayston on the checks. However, the court could infer from Woodward's testimony that defendant endorsed the checks. The checks were payable to McDaniel. If it was a reasonable conclusion that defendant endorsed the checks, it was also a reasonable conclusion that he either uttered them or they were presented for payment at his instigation and with his knowledge. In either event, his responsibility would be the same. (*People* v. *Johnson*, 85 Cal.App.2d 240, 244 [192 P.2d 483].) Whether McDaniel had an intent to defraud was a question of fact to be resolved by the court from all the circumstances in evidence. (*People* v. *Brown*, 137 Cal.App.2d 138, 143 [289 P.2d 880].) It was a reasonable inference, and we believe a necessary one, that since McDaniel worked for Bookcases, Inc., he knew that there was no such person as Ayston and that he was acting with a fraudulent intent.

The final point to be considered is the claimed unconstitutionality of the so-called ''prior felony conviction laws.'' Defendant attacks the statutes upon the ground that they place an accused person in double jeopardy for the same offense. Suffice it to say that the enactments have previously been attacked upon the same ground and that their constitutionality has been upheld. (See *People* v. *Dunlop*, 102 Cal.App.2d 314, 316-317 [227 P.2d 281], and cases cited.)

The judgment and the order appealed from are affirmed.

Wood (Parker), J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 2, 1958.