[Crim. No. 16491. Second Dist., Div. Two. Apr. 7, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ERNEST NAVARRO CRUZ, Defendant and Appellant.

COUNSEL

David C. Marcus for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Howard J. Schwab, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**HERNDON, J.**—Appellant was charged with possession of heroin for sale in violation of Health and Safety Code section 11500.5 and with prior convictions of narcotic possession in 1952 and 1954. A jury returned a verdict of guilty with findings that the priors were true. The appeal is from the judgment of conviction.

The unusually voluminous record presented to us includes more than 800 pages of reporter's transcript in three volumes. This record indicates a grossly over-extended trial that consumed more than nine days of court time. At the opening of the trial the judge asked defense counsel "What is the estimate of time of trial, Mr. Marcus?" to which counsel responded, "Two days, possibly three." This time estimate should have proved quite accurate because the case is a relatively simple one and is typical of a myriad of very similar cases, the vast majority of which are competently and properly tried in less than three days. More than two trial days were consumed in the proof of the two California priors which, as the record shows, were demonstrably true. Undoubtedly the tactics of the defense served only to add unnecessary emphasis to the subject matter.

*Assignments of Error*

Appellant's repetitious and discursive brief of 146 pages presents and argues the following assignments of error: (1) that the district attorney was guilty of prejudicial misconduct; (2) that evidence of a telephone conversation between appellant and a third party monitored by a police officer was erroneously admitted; (3) that the officers lacked probable cause for the arrest of appellant; (4) that appellant's "discarding of the contraband in question was the result of [appellant's] submission to the express or implied exercise of illegal authority by the officer;" (5) that the trial court erred in failing to give requested instructions relating to entrapment, setup or frameup; (6) that "California recidivist procedure in permitting the charging of prior felony convictions in the same com-

plaint as the formal charge and upon a denial of such convictions compelling [appellant] to stand trial in the same proceedings denies due process and equal protection under law."

Our review of the record has led us to the conclusion that none of these assignments of error is valid. The evidence of appellant's guilt is overwhelming to the point of practical conclusiveness. Even if any of the several charges of misconduct made against the prosecutor were regarded as having validity and even if any assigned error or procedural irregularity in the course of the trial were regarded as having merit and significance worthy of mention, we would declare our conviction beyond a reasonable doubt that there was no miscarriage of justice and that a verdict of guilty would have been returned in this case even if the trial had been conducted by court and counsel in a manner approaching perfection.

### Summary of the Evidence

On March 21, 1968, Sergeant Guenther of the Los Angeles Sheriff's Department had a discussion with one Tony Catalina, a drug addict who was in custody on charges of possession of heroin. Apparently in the hope of gaining favor, Catalina made statements to the officers to the effect that a person named Ernie Cruz was dealing in narcotics. Catalina indicated his willingness to engage Cruz in a telephone conversation and to allow an officer to monitor it. The telephone number was furnished by Catalina and was listed in the name of Caroline Amaya, a person identified by appellant at the trial as his girl friend.

When Sergeant Guenther dialed the indicated telephone number, a male voice answered, saying "hello." Tony Catalina said: "Hello. Is this Ernie?" The voice said, "Yeah, this is Ernie. Is this Tony?" Catalina said, "Yes. . . . Can you do me any good? I need a couple of pieces." The male voice said: "Yeah, I can do you some good. Have you got the bread?" There was a discussion about price, and Catalina said he would have to owe for "one piece." The male voice said, "All right. Can you meet me down here?" Catalina said, "Where?" The male voice said: "At the drug store at Mines and Rosemead where we have met before, or where we have done business before. I like to do business where it's light so I can see everything." Catalina said, "OK. What time?" The male voice said, "7 o'clock." Catalina further cooperated by furnishing the police with a description of the personal appearance of the Ernie Cruz with whom he had talked in the monitored telephone conversation. He also gave the officers a description of the make, model and color of the automobile that Cruz was driving.

Thereafter, on the same day and shortly before the appointed time,

Sergeant Guenther and three other officers drove to the corner of Mines Avenue and Rosemead Boulevard in Pico-Rivera using Catalina's car. About 30 minutes later appellant arrived and parked his car in a parking lot adjacent to a drug store. Appellant's car closely fitted the description given by Catalina.

Appellant got out of his car and walked to the front of the drug store and while he was standing on the sidewalk at that location, Sergeant Guenther approached him from the driveway of the parking lot, held out his badge and identification card and said "Ernie, I'm a sheriff['s] narcotics officer. I would like to talk to you." Appellant turned and looked in the officer's direction and then started running eastward toward Mines Street on the sidewalk in front of the drug store. As he passed the end of the drug store Sergeant Guenther observed him thrust his right hand into his pocket and immediately thereafter make a throwing motion with his left hand. He observed a white object leave appellant's left hand and fall in the vicinity of an ivy patch which grew on the north side of the drug store. Sergeant Guenther called to the officers who followed behind him that "he had just thrown something" and continued to pursue appellant across Mines Street where he was apprehended.

Lieutenant Berteaux testified that he saw appellant throw the package a distance of approximately 20 feet. The package fell into the bed of ivy but carried and came to rest on the sidewalk. Lieutenant Berteaux followed the flight of the object after it was thrown. He immediately picked it up and handed it to Deputy Shocker. The evidence established that the retrieved object was a package containing 53.5 grams of heroin and indicated that it had been packaged for the purpose of sale.

When Sergeant Guenther overtook him, appellant offered strong resistance to his arrest. When Deputy Shocker arrived at the scene of the arrest, appellant and Sergeant Guenther were wrestling on the ground. Appellant appeared to be striking at the officer and there were "rocks and things" lying about. Deputy Shocker advanced and used his weapon to strike a blow to appellant's head. Thereupon appellant said that he "gave up." He was then handcuffed and taken into custody.

### Summary of Appellant's Testimony

Appellant took the witness stand in his own behalf. His version of relevant history will be stated in the following three paragraphs.

Appellant had met Tony Catalina several weeks before March 21, 1968, the day of his arrest. On two or three occasions they had discussions relating to an automobile which appellant considered buying from Tony,

whose stated price was $300. After seeing the car appellant had agreed to buy it but stated that he didn't have all the required money at that time. He gave Tony $100 with the understanding that Tony would call him back that same afternoon. It was on this occasion that he gave Tony the telephone number listed in the name of Caroline Amaya.

Appellant did not hear from Tony again until March 21, 1968. On that afternoon appellant was visiting his girl friend Caroline Amaya at her apartment in Alhambra. When the telephone rang, appellant answered. Tony asked him if he had "the bread for the wheels." Appellant replied "Yes." Tony asked appellant if he could see him right away and appellant told him he would see him at 7 p.m. at the drug store—at the drug store where he saw him the other day. Appellant did not know that Tony was in the custody of the police officer at the time of this conversation.

Appellant proceeded to the drug store at about 7 o'clock and drove into the parking lot. He observed Tony's car parked in the parking lot nearby. Appellant got out of his car and walked to the drug store. At that point the thought occurred to him that he had left his keys in the car. As he started to turn around he heard someone call to him "stop, Ernie." He then turned and walked a few steps in the direction of the voice. He saw two people standing, whereupon he started to turn to go back to his car and took a few steps in that direction. The two persons he previously had observed then started to run toward him, one in a half crouched motion with a drawn gun. Appellant said that his first thought was that Tony Catalina was trying to get some money he was supposed to have for his car so he proceeded to turn and run. He was overtaken, tackled and struck with a gun. He denied that he had ever thrown anything as he was pursued by the officers and denied that he had any narcotics in his possession at that time.

### The Prosecutor Was Not Guilty of Misconduct.

■ Appellant's charges of misconduct are so plainly lacking in substantial foundation that they deserve no extended discussion. There is nothing in the record tending to indicate that the prosecutor acted in bad faith or that he attempted to persaude the court or jury by resorting to any deceptive or dishonest method of procedure. (Cf. *People* v. *Asta,* 251 Cal.App.2d 64, 86 [59 Cal.Rptr. 206]; *People* v. *Baker,* 207 Cal.App.2d 717, 724 [24 Cal.Rptr. 691].)

We shall indicate the quality of the specific assignments of misconduct by discussing representative examples. Complaint is made of the prosecutor's conduct in explaining to the jury during the course of his opening statement that the informer Catalina would not be called as a witness for

the reason that he was then confined at the California Rehabilitation Center at Corona. Regardless of any question as to the correctness or sufficiency of this explanation, there is not the slightest indication that it was made in bad faith and certainly it was not prejudicial.

■ Appellant argues that the prosecutor was guilty of misconduct in stating to the jury in his opening statement that he expected to prove appellant's prior convictions by the testimony of parole officers and by documentary evidence. The fallacy of this argument is self-evident. Appellant put the prosecutor to the necessity of proving the priors by denying them. (*People* v. *De Arkland*, 262 Cal.App.2d 802, 814 [69 Cal.Rptr. 144]; *People* v. *Gaynor*, 123 Cal.App.2d 72, 73 [266 P.2d 72].)

It is argued that misconduct was committed when the prosecutor called appellant's mother to the witness stand. Appellant ponts to the court's order excluding witnesses and the fact that she had been allowed to remain in the courtroom after counsel on both sides had indicated that she would not be called as a witness.

The record indicates that in calling this witness the prosecutor acted in good faith upon information acquired during recess to the effect that she could give relevant testimony concerning the relationship existing between appellant and Caroline Amaya. It later developed that this was a matter of no consequence and especially so in view of appellant's testimony confirming the relationship in question. We shall not extend this opinion by discussing other assignments of misconduct which we have rejected as manifestly unmeritorious and unsubstantial.

### Evidence of the Monitored Conversation Between Appellant and the Informer Was Properly Admitted.

■ In the court below appellant objected to the evidence of the monitored telephone conversation on constitutional grounds. The objection was properly overruled. It is well settled that where an officer overhears a telephone conversation with the consent of one of the participants, such listening does not violate any California or federal statute nor any constitutional prohibition. (*People* v. *Chatfield*, 272 Cal.App.2d 141, 146-147 [77 Cal.Rptr. 118]; *People* v. *Malotte*, 46 Cal.2d 59, 63-64 [292 P.2d 517]; *People* v. *Lawrence*, 149 Cal.App.2d 435, 442 [308 P.2d 821]; *People* v. *Jones*, 254 Cal.App.2d 200, 220 [62 Cal.Rptr. 304].) The recent decision in *Katz* v. *United States*, 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507], does not contradict or impair the authority of these California decisions.

■ The sole ground of objection to the evidence of the telephone conversation argued on appeal is that no proper foundation was laid for its introduction in that there was no sufficient evidence to identify appellant as the participant with Catalina in the monitored conversation. There is no semblance of merit in this argument. The testimony of the officer with respect to the telephone conversation was admissible to prove, as it did prove, that the officers acted with more than sufficient cause when they went to the appointed place to perform their obvious duties in the event Ernie appeared to deliver "a couple of pieces" in exchange for Tony's "bread."

Moreover, as our summary of the evidence has shown, it was conclusively proved that Catalina and appellant were the participants in the telephone conversation in question. When appellant took the stand he confirmed that previously established fact; he contradicted the testimony of the police officer only with respect to the content of the conversation. Quite obviously, and quite understandably, the jury disbelieved appellant's version.

### There Was Probable Cause for Appellant's Arrest

Sergeant Guenther personally had heard the voice of "Ernie" enunciating his promise to deliver contraband to Catalina at the specified time and place. This knowledge alone was sufficient to *require* the police, *as a matter of duty,* to go to the indicated place and to perform the further duties of their office in such manner as developing circumstances might reasonably require. Added to this knowledge was the further information which their informer had supplied, including a detailed description of the personal appearance of the man to whom he had talked, and whom he had identified as Ernie Cruz, together with the detailed description of the make, model and color of his automobile.

■ Appellant's furtive actions during his attempt to escape when he was approached by the officer, added to all the other knowledge and information which previously had been imparted to the officer, provided more than sufficient cause for his arrest. ■ Information provided by a reliable informer alone can be sufficient for probable cause. ■ Information from an untested informer may be sufficient for probable cause if there is other corroborating evidence such as furtive action. (*People* v. *Talley,* 65 Cal.2d 830, 836-837 [56 Cal.Rptr. 492, 423 P.2d 564]; *People* v. *Remijio,* 267 Cal.App.2d 180, 184 [72 Cal.Rptr. 741]; *People* v. *Satterfield,* 252 Cal.App.2d 270, 275 [60 Cal.Rptr. 733].) And it is not necessary that the corroborating evidence be in itself sufficient for probable cause if it is combined with the knowledge received from the untested

informant. (*People* v. *Lara,* 67 Cal.2d 365, 373-375 [62 Cal.Rptr. 586, 432 P.2d 202].)

Appellant's reliance on *People* v. *Brown,* 45 Cal.2d 640 [290 P.2d 528], and *Henry* v. *United States,* 361 U.S. 98 [4 L.Ed.2d 134, 80 S.Ct. 168], is misplaced. In *People* v. *Brown* there was no informant, tested or untested, and no furtive conduct. And in *Henry* v. *United States,* although there was implication of the defendant by an informant, the court specifically found that the evidence showed "no mark of fleeing men or men acting furtively." (P. 103 [4 L.Ed.2d 139].)

### *The Trial Court Did Not Err in Refusing to Give Instructions on Entrapment, Setup or Frameup.*

 There is no evidence in the record to require or justify the giving of any instruction on entrapment, setup or frameup. The evidence demonstrates to the point of certainty that appellant was ready, willing and able to deliver the heroin in exchange for Catalina's money before the officers took any action whatsoever with reference to the transaction.

Even assuming that Tony Catalina was acting as an agent of the sheriff's department, the only solicitation or encouragement that could be attributed to the sheriff's department on this theory would be Catalina's inquiry, "Can you do me any good?" Appellant conclusively proved his predisposition to commit the crime by his promptness in answering, "Yeah, I can do you some good. Have you got the bread?" and by further suggesting the meeting place and time of the proposed transaction.

 The law of California is clear that there is no basis for a claim of entrapment, even when the commission of the crime has been encouraged by a decoy used by the police, if the defendant displays a pre-existing criminal intent. (*People* v. *Benford,* 53 Cal.2d 1, 10-11 [345 P.2d 928]; *People* v. *Chatfield, supra,* 272 Cal.App.2d 141, 147; *People* v. *Meacham,* 256 Cal.App.2d 735, 745-746 [64 Cal.Rptr. 362.) Nor is it necessary to give an instruction on entrapment where there is a complete lack of evidence of any entrapment. (*People* v. *Malotte, supra,* 46 Cal.2d 59, 64-65; *People* v. *Bourland,* 247 Cal.App.2d 76, 93 [55 Cal.Rptr. 357].) Here there is no evidence that would tend to support a finding that appellant's intent to commit the crime was induced by any action of the sheriff's department.

*No Bifurcated Trial Is Required for the Determination of the
Truth of Prior Felonies and the Issues Relating to Guilt
or Innocence of the Crime Presently Charged.*

California's practice .of charging prior felonies with the offense being tried has been held to be constitutional. (*People* v. *McDaniel,* 157 Cal.App.2d 492, 501 [321 P.2d 497], appeal dismissed, 358 U.S. 282 [3 L.Ed.2d 299, 79 S.Ct. 323], rehearing denied 359 U.S. 932 [3 L.Ed.2d 634, 79 S.Ct. 610].) "A separate, bifurcated trial on the issue of appellant's prior convictions was not required." (*People* v. *Hickok,* 230 Cal.App.2d 57, 60 [40 Cal.Rptr. 687], cert. den. 381 U.S. 954 [14 L.Ed.2d 726, 85 S.Ct. 1811]; *People* v. *Hoerler,* 208 Cal.App.2d 402, 409 [25 Cal.Rptr. 209; *People* v. *Williams,* 148 Cal.App.2d 525, 535-536 [307 P.2d 48].)

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 5, 1970. Wright, C. J., did not participate therein. Peters, J., was of the opinion that the petition should be granted.