[Crim. No. 23353. Second Dist., Div. One. Mar. 15, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
LOUIE GUILLEN, JR., Defendant and Appellant.

## COUNSEL

David E. Kenner, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**LILLIE, Acting P. J.**—A jury found defendant guilty of arson (§ 447a, Pen. Code) and attempted arson (§ 451a, Pen. Code). He appeals from the judgment.

There is no challenge to the sufficiency of the evidence to support the judgment; appellant's prime contention is that he was deprived of a fair trial because of certain procedural matters. ■ His first claim is a denial of due process which he asserts occurred when the trial judge read to the jury the allegation in the information of a prior felony conviction (§ 11530, Health & Saf. Code) the truth of which he had previously denied. He concedes that sections 969, 1025 and 1093, Penal Code, authorized this procedure and that California courts have yet to find them to be unconstitutional; however, he challenges the constitutionality of the Penal Code sections and urges us to depart from established case authority. Relying on two cases upholding the constitutionality of statutes permitting the practice of charging prior felony convictions with the offense being tried and the jury to be informed of the charge (*People* v. *Cruz*, 6 Cal.App.3d 384, 394 [85 Cal.Rptr. 918] [cert. den. (1970) 400 U.S. 966 (27 L.Ed.2d 386, 91 S.Ct. 377)] and *People* v. *McDaniel*, 157 Cal.App.2d 492, 501 [321 P.2d 497] [app. dism. 358 U.S. 282 (3 L.Ed. 2d 299, 79 S.Ct. 323)]), we see no basis for the challenge.

■ Because at the outset the trial court read the allegation of the prior to the jury and the prosecutor briefly mentioned it in his opening

statement,[1] appellant also claims that the court erred in ordering a bifurcated trial in which evidence would be taken only on the main cause and the introduction of any evidence on the prior would be postponed until the return of the jury's verdict[2] therein. He says this procedure was followed "despite [his] vigorous objection." The record fails to reflect any such "vigorous objection"; what it does reflect is an equivocal statement by defendant, and that his counsel not only presented the stipulation permitting the bifurcation but readily joined therein.

At the commencement of the trial counsel and the court discussed the stipulation, and originally it was presented to the court by the prosecutor because "there is the potential danger of some prejudice to Mr. Guillen's case if the proof on the prior is put on prior to the determination." After stating that it would not accept the stipulation unless defendant personally agreed thereto and explaining to him the benefits of a bifurcated trial, the court continued the matter to permit defense counsel to discuss it further with his client. Upon resumption of the proceedings defense counsel himself offered the stipulation because "I feel that it is, not only in the interest of justice in this case, but is in fact in the interest of my client," stating that he thoroughly explained the stipulation and the effect of a bifurcated trial to defendant but that defendant told him he felt he had already been prejudiced by the court having read the prior to the jury and nothing could cure it. However, when the court asked defendant if he had anything to say in this regard he replied only, "Well, Judge, I don't really have anything to say. I felt that this Court has the obligation to protect my interests at all times in this procedure. And I have nothing further to say." We cannot construe this equivocal statement as being any real objection much less the "vigorous" one now claimed on appeal; it was an obvious effort on defendant's part to remain free of any personal commitment and a refusal to bind himself to any position, which conduct reflects his rather extensive experience in criminal court proceedings. Despite the lack of express consent, defense counsel nevertheless in the exercise of his best judgment accepted the stipulation stating, "To that extent I have the power, legally and practically to accept this stipulation" even though he stated that defendant told him he disapproved of it and would not authorize him "to enter into any stipulation that he doesn't agree with. His [defendant's] position is nothing should be stipulated,

---

[1] In passing the prosecutor made brief mention of the prior in his opening statement, "Now, we have two counts here, plus the allegation of a prior." He did not further allude to it in the jury's presence either during the trial or in his arguments.

[2] After defendant's conviction he waived a further jury trial on the prior; after the People declined to offer evidence thereon the trial court found the allegation of the prior felony conviction to be not true.

nothing should be agreed to." Pursuant to the stipulation the court ordered a bifurcated trial and outlined the order of proof to be thereafter used, all in the stated interest of protecting defendant's rights.

We conclude that the stipulation was binding and the trial court properly made the order pursuant thereto. First, section 1025, Penal Code, provides that "the question whether or not [defendant] has suffered such previous conviction must be tried by the jury which tries the issue upon the plea of not guilty, . . ." but nothing in this section requires that the two issues be tried at the same time or in the same trial, and nothing prohibits the court from ordering or requires that it give defendant " '[a] separate, bifurcated trial on the issue of [his] prior convictions. . . .' " (*People* v. *Cruz,* 6 Cal.App.3d 384, 394 [85 Cal.Rptr. 918]; *People* v. *Hickok,* 230 Cal.App.2d 57, 60 [40 Cal.Rptr. 687].) Thus it appears doubtful that not to have a bifurcated trial is a right, at least not a fundamental right requiring defendant's personal waiver. In making the order the trial court commented that it was not convinced defendant must personally consent to the procedure, and neither are we. If in fact defendant was dissatisfied with the stipulation he personally made no specific objection thereto though given the opportunity to do so in open court preferring to voice whatever disapproval he might have had only through his counsel, a practice, viewed in light of his present contention, that merits a suspicion of defendant's lack of good faith. Second, by the stipulation and subsequent order the main object of the prosecutor, defense counsel and the trial court was to benefit defendant by sparing him the necessity of defending against the prior during the guilt phase of the trial and eliminating any prejudice that might result therefrom. Having ordered the bifurcation the trial court thereafter allowed no evidence of the prior conviction or any mention thereof on the main trial. Third, recognizing the advantages of a bifurcated trial to his client, defense counsel, long experienced in criminal trials and the exercise of his best judgment, readily stipulated to the procedure.     It is well established that an attorney representing a criminal defendant has the power to control the court proceedings. (*People* v. *Robles,* 2 Cal.3d 205, 214 [85 Cal.Rptr. 166, 466 P.2d 710]; *People* v. *Floyd,* 1 Cal.3d 694, 704 [83 Cal.Rptr. 608, 464 P.2d 64]; *People* v. *Hill,* 67 Cal.2d 105, 114-115 [60 Cal.Rptr. 234, 429 P.2d 586].) Accepting the stipulation was clearly a knowledgeable choice of tactics on the part of defense counsel, and problems of strategy were his responsibility. (*People* v. *Gardner,* 71 Cal.2d 843, 851 [79 Cal.Rptr. 743, 457 P.2d 575]; *People* v. *Reeves,* 64 Cal.2d 766, 774-775 [51 Cal.Rptr. 691, 415 P.2d 35].) He not only had the power to act as he did, but the "implied authority to enter into stipulations affecting procedure in the trial,

as distinguished from those which go to the cause of action itself [citations]." (*People* v. *Wilson* 78 Cal.App.2d 108, 120 [177 P.2d 567].) Fourth, the order bifurcating the trial is no more than one directing the order of proof which is largely within the discretion of the trial judge. (*People* v. *Avery,* 35 Cal.2d 487, 491-492 [218 P.2d 527]; *People* v. *Gray,* 259 Cal.App.2d 846, 853 [66 Cal.Rptr. 654].)

■ We find neither an abuse of the trial court's discretion in ordering the bifurcation nor any prejudice resulting from the order. Appellant argues that the trial court having read the allegation to the jury and the prosecutor having mentioned the prior in his statement to the jury, he thereafter was deprived by the order of the opportunity to convince the jury that he had suffered no such prior conviction. Defense counsel's ready willingness to stipulate over and above what he claimed to have been his client's disapproval, and his statement to the court at that time suggests that he evaluated whatever evidence defendant had to rebut the proof of the prior and recognized that it was not sufficiently impressive to meet the evidence he anticipated the prosecutor would offer. Moreover, appellant does not contend that he had the kind of proof that could have successfully rebutted the proof of the People; thus had he been put on his defense on the issue of the prior during the guilt phase any unsubstantiated denial of such prior would have affected adversely his credibility with the jurors, particularly where mug shots, fingerprint evidence and part of the file in the previous case were bound to be offered by the People in support of the prior felony conviction.

■ Appellant also contends that once the jury was apprised of the prior the trial judge *sua sponte* should have given a limiting instruction on the issue of the prior. The record shows, however, that defense counsel expressly stipulated that specifically no instruction be given by the court on the matter of the prior on the guilt phase; only brief mention of the allegation was made by the court to the jury when at the outset of the trial it read the information; no evidence was offered on the prior and no further mention thereof was made to the jury. The implication of counsel's stipulation is that such an instruction under the circumstances might unduly emphasize the prior felony conviction. Moreover, the trial having been bifurcated and no evidence having been offered on the prior the court had no duty to give a limiting instruction. Finally, in light of the overwhelming evidence of guilt on the main cause no prejudice could result from the failure to give such instruction. The evidence shows that an apartment located in Montebello occupied by Mrs. Gonzales with whom defendant had earlier lived had burned. A deputy in the arson

explosives detail of the sheriff's office testified that the fire had been intentionally started by throwing into the apartment a lighted bottle containing flammable fluid (Molotov Cocktail). Mrs. Gonzales testified that previously defendant had told her "that he would set the place on fire," on another occasion that "he would burn the whole building down," and some time after the fire, "I'm not lying to you. I did burn the house in Montebello." After the fire Mrs. Gonzales moved to her mother's home in El Monte. Subsequently defendant told her "that he was going to burn [her] mother's house down." The mother testified that defendant told her "I was going to be sorry because he was going to set my house on fire." Subsequently the El Monte house burned and just before the incident defendant was seen in the vicinity by several persons. A fire inspector testified that the fire "was set by a person or persons unknown with the application of heat or flame to ordinary combustibles." Alibi witnesses testified that defendant was with them on the occasion of each fire; defendant did not take the stand.

██ Prior to trial defendant informed the judge he desired an attorney different than the public defender (Mr. Doddy) who had been representing him up to that point because "I have talked to Mr. Doddy before, and he has defended me on other cases before, and I felt that he knew too much about my record. And I have known him approximately, for probably five years, off and on. He has defended me in other cases in El Monte at the time that he was public defender in El Monte. And I felt that—I feel that he is a good attorney, but yet I feel that he knows too much about me, and I don't feel that he would help me as much as he could. But I don't know that. And there is nothing I have against Mr. Doddy. It's just that I want to get a fair trial." Commenting that it had considerable experience with Mr. Doddy and found nothing to indicate that he does other than an exceptional job on behalf of his clients, and since defendant's only complaint was he "knows too much" about him, the trial court did not consider it sufficient to relieve the public defender. Appellant claims that the denial of his motion to substitute counsel and the court's failure to investigate the matter deprived him "of effective aid of counsel." We have carefully reviewed the entire record and can only conclude that defense counsel was "ready, willing and able" to proceed, entirely competent and fair to his client, and ably and effectively represented defendant throughout the entire proceedings. Further, we perceive no justification for the substitution in defendant's cited "reason" that his present counsel "knew too much" about him and his record. We agree with the trial court that such knowledge would be beneficial to defendant particularly in light of his concession that Mr. Doddy "is a good attorney,"

that while he did not feel "that [counsel] would help [him] as much as he could," he didn't "know that," and that he had nothing against Mr. Doddy. Nothing offered to the court shows that his counsel could, would or did not help him "as much as he could" or provide an effective defense even though the jury brought in a verdict against his client. Finally, defendant was an indigent and Mr. Doddy is a deputy public defender. "The appointment of counsel to represent an indigent rests, as always, in the sound discretion of the trial court, and there can be no abuse of that discretion when the court appoints competent counsel who is uncommitted to any position or interest which would conflict with providing an effective defense." (*Drumgo* v. *Superior Court*, 8 Cal.3d 930, 934-935 [106 Cal.Rptr. 631, 506 P.2d 1007].) Footnote 3 on page 935 continues: "We do not discourage the practice of soliciting the views of both defendant and counsel before making an appointment for the defense of an indigent, but the weight to be accorded these views must, as the appointment itself, rest within the sound discretion of the trial court."

Appellant argues that even though his counsel did not want him to do so, he should have been allowed to testify and was denied "his fundamental due process right to testify on his own behalf." He first mentioned this to the court *after* his conviction and as a ground for a motion for new trial. There is manifest no abuse of the exercise of the trial court's sound discretion in denying the motion for new trial on the ground urged by defendant. First, appellant does not claim that the trial court prevented him from testifying but that his own counsel "instructed" him not to testify because the prosecutor would "destroy" him if he did,[3] which clearly indicates that the decision of his counsel not to let him take the stand was a tactical one. Although normally the decision whether a defendant should testify is within the competence of the trial attorney, where a defendant insists that he wants to testify he cannot be deprived of that opportunity. (*People* v. *Robles*, 2 Cal.3d 205, 215 [85 Cal.Rptr. 166, 466 P.2d 710].) Second, while it is true that the right to testify on one's own behalf is a fundamental right, that right must be "timely" asserted. (*People* v. *Robles*, 2 Cal.3d 205, 215 [85 Cal.Rptr. 166, 466 P.2d 710].) Defendant did not apprise the court he desired to testify at any time during the trial proceeding when the right could have been accorded him, instead he waited until an adverse verdict was rendered against him before advising the court he had really wanted to take the stand after

---

[3]On his motion for new trial defendant cited to the court various reasons why he felt he did not receive a fair trial; one of those was "not being able to testify when I wanted to. My attorney instructed me that I shouldn't testify because the D. A. had five pages of transcript to bring before me, and he said that he would destroy me and I told him I still wanted to testify, and after that, there was nothing else said about it."

all, then demanded a new trial—another chance before a new jury—on the ground his counsel had "deprived" him of his right. The obvious unreasonableness of such an approach doubtless led to the established rule that a defendant who desires to take the stand contrary to the advice of his counsel must make proper and timely demand. "We are satisfied that the right to testify in one's own behalf is of such fundamental importance that a defendant *who timely demands* to take the stand contrary to the advice given by his counsel has the right to give an exposition of his defense before a jury. (*People* v. *Blye,* 233 Cal.App.2d 143, 149 [43 Cal.Rptr. 231].)" (Italics added.) (*People* v. *Robles,* 2 Cal.3d 205, 215 [85 Cal.Rptr. 166, 466 P.2d 710].)

Likewise without merit is appellant's contention that the trial court erred in giving, at the same time all instructions were read prior to the commencement of the jury's deliberation, an instruction proffered by the People advising the jurors of the desirability and preferability of agreeing upon a verdict if they could reasonably do so. The instruction variously known as the "*Allen*" or "*Baumgartner*" instruction has been given in a variety of cases including *People* v. *Burton,* 55 Cal.2d 328 [11 Cal.Rptr. 65, 359 P.2d 433]; *People* v. *Ozene,* 27 Cal.App.3d 905 [104 Cal.Rptr. 170]; *People* v. *Gibson,* 23 Cal.App.3d 917 [101 Cal.Rptr. 620]; *People* v. *Ortega,* 2 Cal.App.3d 884 [83 Cal.Rptr. 260]; *People* v. *Barnes,* 210 Cal.App.2d 740 [26 Cal.Rptr. 793]; and *People* v. *Baumgartner,* 166 Cal.App.2d 103 [332 P.2d 366], but after the jury foreman announced the jury was deadlocked. Appellant asserts that such instruction can only be properly given if the jury appears to be deadlocked but in making his argument he overlooks the rationale developed in the authorities that the giving of such an instruction constitutes error only if it tends to coerce the jury into returning a guilty verdict. While the giving of such instruction may create a coercive effect on a jury already deadlocked, and the question of coercion is of necessity "peculiarly dependent upon the facts of each case" (*People* v. *Burton,* 55 Cal.2d 328, 356 [11 Cal.Rptr. 65, 359 P.2d 433]), it is less likely that coercion would be exerted on a jury by such instruction read with all other instructions in the case *before* deliberation when it can only be reasonably construed as as much urging the jurors to bring in a verdict of acquittal as one of guilty in preference to no verdict at all. The danger of coercion arises when the instruction is given under circumstances that show the court's preference to a particular verdict. (*People* v. *Carter,* 68 Cal.2d 810, 816 [69 Cal.Rptr. 297, 442 P.2d 353].) It is clear that when, under the circumstances of its use, the instruction is merely "an adjuration to careful and dispassionate discussion and consideration of all issues, there is no element of coercion present.

(*People* v. *Walker, supra,* 112 Cal.App.2d 462 at p. 472 [246 P.2d 1009]; *People* v. *Ortega, supra,* 2 Cal.App.3d 884; *People* v. *Lammers,* 108 Cal.App.2d 279 [238 P.2d 667].)" (*People* v. *Gibson,* 23 Cal.App. 3d 917, 922 [101 Cal.Rptr. 620].)

The judgment is affirmed.

Thompson, J., and Hanson, J., concurred.

A petition for a rehearing was denied April 8, 1974, and appellant's petition for a hearing by the Supreme Court was denied May 8, 1974.