112 Cal.App.3d 441 (1980)
169 Cal. Rptr. 359
THE PEOPLE, Plaintiff and Respondent,
v.
ARTHUR F. OWENS, JR., Defendant and Appellant.
Docket No. 19880.
Court of Appeals of California, First District, Division Three.
November 21, 1980.
*444 COUNSEL
Steven L. Dylina, under appointment by the Court of Appeal, for Defendant and Appellant.
George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Tiffany Rystrom, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
DOSSEE, J.[*]
Appellant Arthur F. Owens, Jr., and his codefendant Charles Madry, Jr., were arrested at a service station in San Jose when, for reasons irrelevant to this appeal, a police officer ran a warrant check on the vehicle they were driving and discovered that it had been stolen.
The two suspects were taken to the police station where they were interviewed and separated and gave inconsistent tape-recorded statements after waiving their right to silence. They were then locked together in an interview room where they engaged in inculpatory conversation which was secretly recorded. At one point in the conversation, Madry asked, "Any speakers in here?" Appellant replied, "Don't you know that they probably have this thing wired?" Madry answered, "Damn. I messed myself up ... I don't know if they have this wired up or not...."
Appellant was charged with taking or driving an automobile without the consent of the owner in violation of Vehicle Code section 10851. The information also alleged that he had suffered two prior felony convictions, one for the same offense and one for sale of a controlled substance (Health & Saf. Code, § 11352).
*445 Appellant admitted the sale of a controlled substance allegation, but denied the other prior. Upon further investigation, the district attorney discovered that appellant had incurred only a misdemeanor conviction as a result of that charge. Accordingly, it was struck from the information.
Upon the jury's verdict of guilty, the trial court sentenced appellant to a state prison term of 16 months. Since he had admitted only one prior conviction and the People proved no other, probation as a sentencing alternative was not made unavailable by Penal Code section 1203, subdivision (e)(4), which prohibits probation for twice-convicted felons. The record, however, reflects a statement by the court that appellant was "statutorily ineligible for probation."
(1) Appellant first contends that the court's statement reveals an assumption that probation was precluded as a sentencing option which caused a failure to exercise discretion. It is evident from the record, however, either that the judge misspoke or that his statement was not correctly transcribed because the record clearly demonstrates that he did not believe Penal Code section 1203, subdivision (e)(4) had any bearing on his sentencing choice.
Before sentencing was pronounced, defense counsel argued for probation, specifically reminding the court of his client's eligibility. The judge's response, read in conjunction with his notations on the probation report by which we have augmented the record, clearly show that he was referring to the probation report as he spoke. The report plainly states that appellant was eligible for probation, but that for various reasons, upon which the court freely commented, such a disposition was not recommended. A reading of the court's comments leaves no doubt in our minds that it recognized and considered the appellant's eligibility for probation.
Under the circumstances, we do not believe that appellant has met the heavy burden he bears in attacking an order denying probation to show a clear abuse of discretion. (People v. Goodsen (1978) 80 Cal. App.3d 290, 295 [145 Cal. Rptr. 489].) His first argument is therefore rejected.
(2a) Appellant's next argument, challenging the constitutionality of Penal Code section 1158, must also be cast aside. That section provides that the finding upon a charge of previous conviction shall be made by *446 the same trier of fact to decide guilt or innocence on the principal offense. Appellant argues that the application of this section violated his right to due process under the California Constitution[1] because it forced him to admit the existence of the charged prior in order to preclude the prosecution from bringing its existence to the attention of the jury.
The constitutionality of the statutory scheme for pleading and proving prior convictions has been upheld repeatedly, and the very argument now advanced by appellant has been rejected numerous times by the Courts of Appeal, with apparent assent by the California Supreme Court. (People v. Guillen (1974) 37 Cal. App.3d 976, 979 [113 Cal. Rptr. 43]; People v. Cruz (1970) 6 Cal. App.3d 384, 394 [85 Cal. Rptr. 918], cert. den. 400 U.S. 966 [27 L.Ed.2d 386, 91 S.Ct. 377]; People v. Mason (1969) 269 Cal. App.2d 311, 313 [74 Cal. Rptr. 708]; People v. Hickok (1964) 230 Cal. App.2d 57, 59-60 [40 Cal. Rptr. 687] (petn. for hg. den. by Supreme Ct.), cert. den. 381 U.S. 954 [14 L.Ed.2d 726, 85 S.Ct. 1811]; People v. Hoerler (1962) 208 Cal. App.2d 402, 407-408 [25 Cal. Rptr. 209] (petn. for hg. den. by Supreme Ct.); People v. McDaniel (1958) 157 Cal. App.2d 492 [321 P.2d 497], app. dism. sub nom. McDaniel v. California (1959) 358 U.S. 282 [3 L.Ed.2d 299, 79 S.Ct. 323] (for want of substantial federal question).)
Appellant has advanced nothing that would permit us to depart from such well-established precedent. Although a certain amount of discretion exists to bifurcate the trial as appellant proposes (see People v. Fisk (1975) 50 Cal. App.3d 364, 373 [123 Cal. Rptr. 414]; People v. Guillen, supra, 37 Cal. App.3d at p. 981; People v. Luick (1972) 24 Cal. App.3d 555, 558 [101 Cal. Rptr. 252]; People v. Romo (1962) 200 Cal. App.2d 83, 93 [19 Cal. Rptr. 179]), failure to do so hardly constitutes a denial of due process.
A determination of whether due process has been afforded in a particular case is always "`a question of judgment and degree' to be answered in light of all of the circumstances and with a view to `fundamental fairness' [citation]...." (In re Saunders (1970) 2 Cal.3d 1033, 1041 [88 Cal. Rptr. 633, 472 P.2d 921].) (3) "In determining applicable due process safeguards, it must be remembered that `due process *447 is flexible and calls for such procedural protections as the particular situation demands.'" (People v. Ramirez (1979) 25 Cal.3d 260, 268 [158 Cal. Rptr. 316, 599 P.2d 622] [quoting Morrissey v. Brewer (1972) 408 U.S. 471, 481 (33 L.Ed.2d 484, 494, 94 S.Ct. 2593)].)
(2b) Several factors militate against a finding of violation here. Penal Code section 1158 and the scheme of which it is a part serve the twin aims of judicial convenience and economy, both legitimate state purposes. It has been in use for a number of years, and has its procedural sibling, the joinder of offenses under Penal Code section 954. Evidence of prior convictions is ordinarily presented in noninflammatory documentary form and juries are presumed to follow instructions which limit the evidence to its proper function. (See CALJIC No. 17.18.) In light of all these circumstances, we cannot find the application of Penal Code section 1158 to be fundamentally unfair.
Appellant's citation to People v. Beagle (1972) 6 Cal.3d 441 [99 Cal. Rptr. 313, 492 P.2d 1] is thoroughly distinguishable. Beagle considered the relationship between Evidence Code sections 788 and 352. It held that because section 788 uses the permissible word "may" rather than a mandatory word such as "shall," the court has discretion to exclude such evidence under Evidence Code section 352.
Beagle thus dealt with a problem entirely distinct from the one at bench, the use of priors for impeachment of a criminal defendant, not the proof of priors charged in the accusatory pleading to which a defendant has the right of trial by jury. Indeed, exclusion of noninflammatory evidence necessary to prove a charged prior would undoubtedly constitute abuse of discretion under section 352. As the court stated in People v. Faulkner (1972) 28 Cal. App.3d 384, 393 [104 Cal. Rptr. 625], "[W]hile in the case contemplated by Beagle the prior conviction evidence goes only to a collateral issue (impeachment of witness), in the instant case the prior felony conviction is relevant to the very issue of guilt [of the prior offense charged in the information].... It is therefore evident that no balancing process is required or allowed."
(4a) We next examine appellant's contention that the trial court erred in admitting the tape recording and transcript of his conversation with Madry. He argues that the monitoring system in operation at the San Jose police station violated his right to privacy under article I, section 1 of the California Constitution and that evidence of the conversation *448 should have been suppressed for that reason. His position finds almost no support in existing authority.
It is firmly established under both state and federal law that in general no reasonable expectation of privacy, in the Fourth Amendment sense, exists in custodial conversation. (Lanza v. New York (1962) 370 U.S. 139, 143 [8 L.Ed.2d 384, 388, 82 S.Ct. 1218]; People v. Hill (1974) 12 Cal.3d 731, 764-765 [117 Cal. Rptr. 393, 528 P.2d 1]; People v. Martinez (1978) 82 Cal. App.3d 1 [147 Cal. Rptr. 208]; People v. Newton (1974) 42 Cal. App.3d 292 [116 Cal. Rptr. 690] cert. den. 420 U.S. 937 [43 L.Ed.2d 414, 95 S.Ct. 114]; In re Joseph A. (1973) 30 Cal. App.3d 880, 884 [106 Cal. Rptr. 729].[2]) Clearly appellant can find no comfort in the privacy protected by the Fourth Amendment.
He claims, however, that a different result is mandated by the so-called privacy amendment, which was added to the state Constitution by popular vote in 1972.[3] In White v. Davis (1975) 13 Cal.3d 757 [120 Cal. Rptr. 94, 533 P.2d 222], the Supreme Court held that any incursion into the as yet undefined realm of privacy shielded by that amendment must be justified by a compelling state interest.
We are convinced, however, that in a pretrial detention facility, where the very fact of incarceration greatly diminishes both the expectation of and the right to personal privacy, and where the state interest in protecting the security of the facility as well as the public at large is of paramount importance, the distinction between what is "reasonable" under the Fourth Amendment and what is "compelling" under article I, section 1, is nonexistent. (See Kornhauser, Privacy: The New Constitutional Language and the Old Right (1976) 64 Cal.L.Rev. 347, at p. 361 et seq.)
All of California's reported appellate decisions considering this subject and rendered since the privacy amendment have assumed the *449 search and seizure and privacy protections to be coextensive when applied to police surveillance in the criminal context.
In People v. Estrada (1979) 93 Cal. App.3d 76 [155 Cal. Rptr. 731], for example, the court rejected defendant's attempt to exclude his taped jailhouse conversation under article I, section 13 (search and seizure) and article I, section 1 (privacy), finding application of both provisions dependent upon a finding of reasonable expectation of privacy. (Id., at p. 98; see also People v. Martinez, supra, 82 Cal. App.3d at pp. 18-19; People v. Kaaienapua (1977) 70 Cal. App.3d 283, 288 [138 Cal. Rptr. 651]; People v. Newton, supra, 42 Cal. App.3d at p. 296; In re Joseph A., supra, 30 Cal. App.3d at pp. 883-884.) (5) Similarly, in Armenta v. Superior Court (1976) 61 Cal. App.3d 584, at page 588 [132 Cal. Rptr. 586], the court stated flatly, "The basic test of whether there has been a violation of [the right to privacy under art. I, § 1] is if a person's personal and objectively reasonable expectation of privacy has been infringed by unreasonable governmental intrusion."
(4b) Certainly both the compelling state interest test of White v. Davis, and the balancing test of reasonableness under the Fourth Amendment[4] have been satisfied on the record before us. The monitoring system in use at the San Jose police station was used to overhear a discussion between two recently arrested felony suspects who had just made factually divergent statements in separate interviews. Thus, in addition to the compelling interest in maintaining jail security we must consider the public interest in acting on a well-founded suspicion that the detainees would take the opportunity to get their stories straight and that their conversation would touch on criminal activity.
Appellant's privacy interest in the conversation, which he subjectively did not hold, cannot provide sufficient ballast to tip the scales in his favor. Moreover, his persistence in discussing the theft despite his strong suspicion that he was being overheard indicates that he waived any right he otherwise may have had to exclude the "uninvited ear."
The judgment is affirmed.
*450 Scott, J., concurred.
WHITE, P.J., Concurring.
The mandate of Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455 [20 Cal. Rptr. 321, 369 P.2d 937], compels that I concur in the result reached by the majority in this instance. However, I cannot presently subscribe to the overbroad sweeping views expressed in their reasoning. I need more time for reflective thought before acceptance. My hesitancy is dictated by my conviction that the parameters of the individual's "right to be left alone" as guaranteed by article I, section 1, of the California Constitution are as yet undefined. Therefore, I do not presently understand the decisional law to assume that "search and seizure and privacy protections to be coextensive when applied to police surveillance in the criminal context."[*]
I recognize that it has consistently been held that a jail inmate, whether held on probable cause for his arrest or trial, or after conviction of crime, has no reasonable expectation of privacy from electronic surveillance under the general circumstances of the case before us. (See Lanza v. New York (1962) 370 U.S. 139, 143-144 [8 L.Ed.2d 384, 388, 82 S.Ct. 1218]; People v. Hill (1974) 12 Cal.3d 731, 764-765 [117 Cal. Rptr. 393, 528 P.2d 1] [overruled on other grounds, People v. DeVaughn (1977) 18 Cal.3d 889, 896, fn. 5 (135 Cal. Rptr. 786, 558 P.2d 872); North v. Superior Court (1972) 8 Cal.3d 301, 308-309 [104 Cal. Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155]; Halpin v. Superior Court (1972) 6 Cal.3d 885, 900, fn. 21 [101 Cal. Rptr. 375, 495 P.2d 1295]; People v. Estrada (1979) 93 Cal. App.3d 76, 98-99 [155 Cal. Rptr. 731]; People v. Martinez (1978) 82 Cal. App.3d 1, 15 [147 Cal. Rptr. 208]; In re Joseph A. (1973) 30 Cal. App.3d 880, 884 [106 Cal. Rptr. 729].)
However, any incursion into the individual's right of privacy added to the California Constitution by the 1972 amendment to article I, section 1, must be justified by a compelling state interest. (Loder v. Municipal Court (1976) 17 Cal.3d 859, 864 [132 Cal. Rptr. 464, 553 P.2d 624], cert. den. 429 U.S. 1109 [51 L.Ed.2d 562, 97 S.Ct. 1143].) Of course, jail security or prevention of escape is such a compelling state interest.
What troubles me about the decision we reach today is that arguably herein the police authorities were not concerned about security or foiling *451 a jail break. They were carrying out their legitimate interest in ferreting out and solving crimes, in which case a less intrusive method was available. Appellant and his associate had waived their Miranda rights. Shouldn't the police be required to first further question the suspects about the contradictions in their statements before resorting to covert electronic surveillance?
NOTES
[*] Assigned by the Chairperson of the Judicial Council.
[1] Appellant wisely avoids claiming any federal constitutional weakness in the procedure. Prior convictions constitutionally obtained may be introduced at trial without running afoul of the United States Constitution and two-step jury trials of the sort advocated by appellant here are not required under circumstances such as these. (Spencer v. Texas (1967) 385 U.S. 554, 564 [17 L.Ed.2d 606, 614, 87 S.Ct. 648].)
[2] Distinguishable is North v. Superior Court (1972) 8 Cal.3d 301 [104 Cal. Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155], where police created a reasonable expectation of privacy by lulling petitioner and his wife into believing that their conversation would be confidential.
[3] The question of the applicability of the privacy amendment to the electronic surveillance of conversations between pretrial detainees and their visitors is currently before the California Supreme Court. (De Lancie v. Superior Court (Cal. App.) hg. granted Nov. 29, 1979, S.F. 24095.)
[4] Determining what is reasonable under the Fourth Amendment "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. [Citations.]" (Bell v. Wolfish (1979) 441 U.S. 520, 559 [60 L.Ed.2d 447, 481, 99 S.Ct. 1861].)
[*] Majority opinion, page 449.