[Crim. No. 21955. Second Dist., Div. Three. Feb. 27, 1973.]

In re JOSEPH A., a Person Coming Under the Juvenile Court Law.
KENNETH E. KIRKPATRICK, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
JOSEPH A., Defendant and Appellant.

## COUNSEL

Richard S. Buckley, Public Defender, John J. Gibbons, Marc C. Petas and Martin Stein, Deputy Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, James H. Kline and Russell Iungerich, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SCHWEITZER, Acting P. J.**—On January 26, 1972, a petition was filed in the juvenile court alleging that Joseph A., 15 years of age, had committed a murder (Pen. Code, § 187) on January 21, and requesting that he be declared a ward of the juvenile court. Following hearings thereon the court ordered that the petition be amended by adding an allegation of voluntary

manslaughter (Pen. Code, § 192, subd. 1), a lesser and necessarily included offense, and that the murder allegation be dismissed. The court then sustained the petition as amended, and ordered that the minor remain a ward of the juvenile court, be removed from the custody of his parents and be committed to the California Youth Authority. Joseph appeals from this order, contending that the juvenile court erred in admitting into evidence over his objection a surreptitiously monitored and tape-recorded oral conversation between him and his uncle in which he admitted stabbing the victim.

The facts surrounding the conversation are not in dispute. Joseph was arrested on January 22, 1972 and advised of his constitutional rights; he refused to waive those rights. Later on the same day, Joseph's uncle went to the police station and told an officer that he wanted to talk to his nephew "by himself." He and Joseph then had the conversation in question in a small interrogation room in the police station. The uncle observed in the room a mirror by which the police could see in but he could not see out; he did not observe therein any device for the listening or recording of the conversation. Without the knowledge or consent of either the minor or his uncle, their conversation was monitored and recorded. There is no evidence that any police officer made any representations to either Joseph or his uncle that their conversation would be confidential; there is no evidence that the uncle was acting as an agent for the police.

Defendant contends that the recorded conversation was inadmissible because it was monitored and recorded in violation of title III of the federal Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C. §§ 2510-2520) and the California Invasion of Privacy Act (Pen. Code, §§ 630-637.2), and violated the Fourth Amendment's proscription against unlawful search and seizure.

The Attorney General contends that title III is unconstitutional as applied to electronically intercepted oral communications between persons within jails or police stations because it constitutes an unreasonable infringement upon the state's right, reserved to the states by the Tenth Amendment, to regulate and administer the internal affairs of their penal institutions, and that oral communications, unlike wire communications, have no connection or relationship to interstate commerce.[1] He also contends that even if title

---

[1]*Halpin* v. *Superior Court*, 6 Cal.3d 885, 896-900 [101 Cal.Rptr. 375, 495 P.2d 1295] (cert. den. 409 U.S. 982 [34 L.Ed.2d 246, 93 S.Ct. 318]) holds that Congress by its enactment of title III has preempted the field of electronic monitoring of a telephone conversation between an arrestee and his wife when carried over wires operated by a common carrier engaged in interstate communications. (Cf. *People* v.

III be held constitutional as to such conversations, persons within jails or police stations have no reasonable expectation of privacy as to their conversations, and that as a result, electronically intercepted oral communications between such persons fall within the specific exceptions of the cited federal and state statutes. Since we base our decision as to the admissibility of the conversation in question on this latter ground, we are not required to discuss these constitutional and preemption questions.

Subject to certain exceptions not here relevant, the federal act makes it a crime to wilfully intercept or disclose any wire or oral communication (18 U.S.C. § 2511) and prohibits the introduction of evidence derived therefrom in any trial. (18 U.S.C. § 2515.) It defines a wire communication as "any communication made . . . through the use of facilities for the transmission of communications by the aid of wire . . . or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of interstate or foreign communications." (18 U.S.C. § 2510, subd. (1).) The proscribed oral communication is defined as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." (18 U.S.C. § 2510, subd. (2).)

It is to be noted that the definition of oral communication, unlike that of wire communication, subject of *Halpin* v. *Superior Court,* 6 Cal.3d 885, 896-900 (*ante,* fn. 1), injects a requirement that there be a reasonable expectation of privacy to come within the proscription of the federal act.

Section 632, subdivision (a), Penal Code, makes it a crime to electronically eavesdrop upon or record a confidential communication, and subdivision (d) thereof prohibits the admission of evidence derived therefrom in any judicial proceeding. Excluded from its provisions are conversations when "the parties [thereto] may reasonably expect that the communication may be overheard or recorded." (Pen. Code, § 632, subd. (c).) Other exceptions set forth are not here relevant.

It thus appears that under both the federal and state statutes, electronically intercepted oral communications are inadmissible only if the parties thereto had a reasonable expectation of privacy. This rule is consistent with

*Santos,* 26 Cal.App.3d 397, 402 [102 Cal.Rptr. 678].) The question of whether the enactment of title III constitutes a federal preemption of electronic surveillance of oral communications has not as yet been considered in any reported decision. (See *North* v. *Superior Court,* 8 Cal.3d 301, 309, fn. 2 [104 Cal.Rptr. 833, 502 P.2d 1305].)

the decisions which have interpreted Fourth Amendment rights. As stated in *Katz* v. *United States*, 389 U.S. 347, 351 [19 L.Ed.2d 576, 582, 88 S.Ct. 507, 511], "What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection. [Citations.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."

The narrow issue before us is whether persons have a reasonable expectation of privacy in their oral communications within a police station or jail facility. California cases have uniformly held that persons under such circumstances ordinarily have no right of privacy. (See authorities cited in *North* v. *Superior Court, supra,* 8 Cal.3d at pp. 317-318 (dissenting opinion of Justice Sullivan); *Halpin* v. *Superior Court, supra,* 6 Cal.3d 885, 900, fn. 21.) *North* v. *Superior Court, supra,* 8 Cal.3d 301, states at page 309: "The rationale underlying this general rule is based upon a policy favoring the use by jail authorities of reasonable security measures. 'A man detained in jail cannot reasonably expect to enjoy the privacy afforded to a person in a free society. His lack of privacy is a necessary adjunct to his imprisonment. . . .' [Citation.]" The United States Supreme Court has stated with respect to the surreptitious surveillance of an oral communication, "it is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. In prison, official surveillance has traditionally been the order of the day. [Fn. omitted.]" (*Lanza* v. *New York,* 370 U.S. 139, 143 [8 L.Ed.2d 384, 387-388, 82 S.Ct. 1218].) In *Lanza* the Supreme Court upheld the admissibility of a transcription of an electronically intercepted jailhouse conversation between petitioner and his brother, an inmate thereof.

It would appear that it was the intent of Congress to recognize the foregoing principle in enacting the Omnibus Crime Control and Safe Streets Act of 1968. The report of the Senate Judiciary Committee states with respect to its definition of oral communication: "The definition is intended to reflect existing law. See *Katz* v. *United States,* 88 S.Ct. 507, 389 U.S. 347 (1967). . . . The person's subjective intent or the place where the communication is uttered is not necessarily the controlling factor. . . . Nevertheless, *such an expectation would clearly be unjustified in certain areas; for example, a jail cell (Lanza v. New York [supra]. . . .)*" (Italics added.) (2 U.S. Code Cong. & Admin. News 2112, 2178, 90th Cong., Second Sess. (1968).)

But as pointed out in *North* v. *Superior Court, supra,* 8 Cal.3d 301, 310-311, the general rule has exceptions: it does not apply to conversations between persons who occupy privileged relationships (attorney-client, husband-wife, etc.); it indicated that the rule might be inapplicable where

the police represented that the communication would be confidential (see *People* v. *Blair*, 2 Cal.App.3d 249, 256 [82 Cal.Rptr. 673]), or where the circumstances are such that the persons "were lulled into believing that their conversation would be confidential." (8 Cal.3d at p. 311.) Here the parties to the conversation did not occupy a recognized privileged relationship; there is no evidence that the police made any representations of confidentiality; there is no evidence that the uncle was acting as an agent for the police. This leaves for determination the factual question as to whether the circumstances presented in the instant case might reasonably be said to have caused the uncle and nephew to be lulled into believing that their conversation would not be intercepted.

Defendant argues that the facts surrounding the conversation presented here are substantially the same as those considered in *North* v. *Superior Court, supra,* 8 Cal.3d 301, and asks us to hold that it was inadmissible for the reasons stated therein. In *North* petitioner's wife visited him during visiting hours at the jail where he was incarcerated; the visit took place in privacy in a detective's private office; the conversation was secretly monitored and tape-recorded. With respect to these facts a divided court said: "[T]he conversation occurred in a detective's private office under circumstances which strongly indicate that petitioner and his wife were lulled into believing that their conversation would be confidential. Although the record does not disclose whether or not [the detective] made any representations to that effect, his admitted conduct spoke as clearly as words—first by surrendering to petitioner and his wife [his] own private office so that they might converse and then by exiting and shutting the door, leaving them entirely alone. Certainly, nothing in [his] actions indicated that petitioner's conversation would be monitored. The foregoing circumstances, *coupled* with the statutory presumption that a conversation between spouses is presumed to have been made in confidence [citation], constituted a sufficient showing by petitioner to establish a reasonable expectation of privacy." (Italics added.) (8 Cal.3d at pp. 311-312.)

Since the court in *North* stressed the secret exploitation of marital confidences in holding that the intercepted conversation was not admissible, it is questionable whether the court would have reached the same conclusion if the husband-wife relationship did not exist. But even assuming that the court would have done so, there is a significant difference in the facts of *North* and those presented herein. There, the detective offered the use of his private office, a fact which might reasonably cause persons to believe that they were being extended special privileges, including that of complete privacy; here, the conversation was held in an interrogation room which would less likely

cause the parties thereto to believe that they were being extended the favor of privacy. Under such circumstances we hold that the parties to the conversation did not have a reasonable expectation of privacy.

Defendant argues that the police, by granting his uncle's request to see defendant "by himself," made an implied representation of privacy, that their act of monitoring the conversation constituted a breach of this representation, and that as a result the conversation is inadmissible, being "fruit of the poisonous tree." We do not agree that this conclusion necessarily follows; the words "by himself" are ambiguous; they can be construed reasonably as meaning "in private" or as meaning "away from other persons in custody." The trial court accepted the latter interpretation, holding that there was no breach of any implied representation of privacy. Since the trial court's construction of these words is reasonable, we are bound by it on this appeal (*In re Roderick P.,* 7 Cal.3d 801, 809 [103 Cal.Rptr. 425, 500 P.2d 1]) and therefore hold that the monitored conversation was properly admitted into evidence under the general rule that persons within a jail or police facility have no reasonable expectation of privacy as to conversations.

Order affirmed.

Cobey, J., and Allport, J., concurred.

A petition for a rehearing was denied March 15, 1973, and appellant's petition for a hearing by the Supreme Court was denied May 23, 1973. Tobriner, J., Mosk, J., and Burke, J., were of the opinion that the petition should be granted.