STATE OF NEBRASKA, APPELLANT, V. ROGER WEIKLE, APPELLEE.

474 N.W.2d 486

Filed September 20, 1991.    No. 91-720.

Gary E. Lacey, Lancaster County Attorney, and David Stempson for appellant.

Dennis R. Keefe, Lancaster County Public Defender, and Richard L. Goos for appellee.

BOSLAUGH, J.

Pursuant to Neb. Rev. Stat. § 29-116 (Reissue 1989), the State seeks interlocutory review of the district court's order of July 3, 1991, which granted the defendant's motion to suppress statements made by the defendant while he was in his prison cell and overheard through the prison's intercom system. The statements related to an assault upon a guard on October 2, 1989, by the defendant which had occurred earlier that evening.

As a result of the assault the defendant was charged with conspiracy to commit first degree murder, attempted first degree murder, and use of a weapon in the commission of a felony. The defendant filed a motion to suppress the statements he had made while in his prison cell which were overheard by a guard through the prison's intercom system in the early

morning hours of October 3, 1989. The following is a summary of the evidence presented at the March 20, 1991, hearing on the defendant's motion to suppress.

Corporal John Graham, an officer at the Nebraska State Penitentiary, stated that he was advised on October 2, 1989, prior to commencing his 10 p.m. to 6 a.m. shift, that Officer Harrington had been stabbed in the penitentiary law library. He was further informed that the defendant and another inmate, Keith Marion, were being questioned about the stabbing. The two inmates occupied separate cells in housing unit 5, to which Corporal Graham was assigned.

Housing unit 5 is the disciplinary facility at the penitentiary and is used to house inmates who have violated prison rules and regulations. The inmates are housed in single-unit cells, but they can communicate with each other by talking through the crack in their cell doors.

Each cell in housing unit 5 is equipped with a microphone-speaker which can be turned on and off by the unit's guard. Through this intercom system an inmate and the guard are able to communicate with each other. If an inmate needs to talk to a guard, he generally yells out, and the guard then turns on the intercom. An inmate is unable to tell whether the intercom in his cell is turned on or not.

On the evening of October 2, 1989, the defendant waived his *Miranda* rights and made statements to a state investigator regarding the stabbing of Officer Harrington. At approximately 12:40 a.m. he was returned to his cell in housing unit 5. At that time, Corporal Graham turned on the intercom in the defendant's and Marion's cells and overheard them talking about the stabbing. Later, when the defendant began talking with another inmate named Hatcher, Corporal Graham turned off Marion's microphone and turned on Hatcher's.

Corporal Graham wrote down what was said between the defendant and the other two inmates. These are the statements which the defendant seeks to suppress.

The defendant testified that although he did not expressly consent to having his conversations between himself and the other two inmates monitored, he did know that there were microphones in all of the cells, and he knew that if they were

turned on, his conversation could be overheard by the prison officials. Furthermore, the defendant's conversation with Marion could be heard by other inmates because the defendant's and Marion's cells were separated by eight other inmates' cells.

Despite the defendant's knowledge of the capabilities of the intercom system and the fact that other inmates could overhear the defendant's conversation, the district court granted the defendant's motion to suppress, relying on Nebraska's intercepted communication statutes, Neb. Rev. Stat. §§ 86-701 through 86-712 (Reissue 1987 & Cum. Supp. 1990). The district court found that the defendant's communications were oral communications within the meaning of the statutes because the defendant had a reasonable expectation that his conversations would not be monitored, even though he knew they could be monitored at any time.

A trial court's ruling on a motion to suppress will be upheld unless its findings are clearly erroneous. *State v. Patterson*, 237 Neb. 198, 465 N.W.2d 743 (1991).

As stated in *State v. Hinton*, 226 Neb. 787, 794, 415 N.W.2d 138, 143 (1987), §§ 86-701 through 86-712 make

> it unlawful to, among other things, deliberately intercept or attempt to intercept, through any means, including through the use of any "electronic, mechanical, or other device," any wire or oral communications, unless the interceptor has previously obtained a court order permitting the interception or is a party to the communication, or one of the parties to the communication has previously consented to the interception.

For the defendant's statements to fall within the protection of these statutes, the conversation must be determined to be an "oral communication." An oral communication is defined to be "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation . . . ." § 86-701(12) (Cum. Supp. 1990).

The Nebraska intercepted communication statutes are patterned after title III of the Omnibus Crime Control and Safe

Streets Act of 1968, 18 U.S.C. §§ 2510 et seq. (1988), as amended. See *Hinton, supra*. Thus, Nebraska looks to federal law in interpreting the provisions of the Nebraska intercepted communication statutes. *Id*.

The legislative history of the federal act is helpful in determining whether the defendant's statements in this case were within the statute's definition of an oral statement. The report of the Senate Judiciary Committee states that the definition of "oral communication" as provided in the statute "is intended to reflect existing law. . . . The person's subjective intent or the place where the communication is uttered is not necessarily the controlling factor. . . . Nevertheless, such an expectation would clearly be unjustified in certain areas; for example, a jail cell . . . ." (Citations omitted.) S. Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S. Code Cong. & Admin. News 2112, 2178. See, also, *Illinois v. Perkins*, 496 U.S. 292, 110 S. Ct. 2394, 110 L. Ed. 2d 243 (1990).

The court in *United States v. McIntyre*, 582 F.2d 1221 (9th Cir. 1978) stated there is a two-pronged analysis in determining whether a statement is an oral communication as defined by the statute. In order for a statement to fall within the statute's definition, the communication must be uttered by a person (1) who has a subjective expectation of privacy and (2) whose expectation is objectively reasonable under the circumstances. *Id*.

In *State v. Williams*, 690 S.W.2d 517 (Tenn. 1985), the defendant and his codefendant had been arrested for murder. While they were occupying the same jail cell, police officers recorded their conversation. The recorded conversation was used at trial to convict the defendant. The Tennessee Supreme Court found that 18 U.S.C. §§ 2510 et seq. was not applicable to exclude the recorded conversation from evidence because the defendant's statements were not a protected oral communication under the act because he did not have the required expectation of privacy, since "such an expectation of privacy is not justified in a jail cell." 690 S.W.2d at 524.

In upholding the admission into evidence of a monitored and tape-recorded conversation between the defendant and his uncle in a police interrogation room, the California Court of

Appeals, in *In re Joseph A.*, 30 Cal. App. 3d 880, 106 Cal. Rptr. 729 (1973), stated as the rationale for its conclusion that there is no reasonable expectation of privacy as to oral communications within a police station or jail facility. The policy behind the court's conclusion favors the use by jail authorities of reasonable security measures. *Id.* Quoting *North v. Superior Court*, 8 Cal. 3d 301, 502 P.2d 1305, 104 Cal. Rptr. 833 (1972), the court stated: " 'A man detained in jail cannot reasonably expect to enjoy the privacy afforded to a person in a free society. His lack of privacy is a necessary adjunct to his imprisonment. . . .' " 30 Cal. App. 3d at 884, 106 Cal. Rptr. at 732.

In this case, the defendant had just been returned to his cell after being questioned about the stabbing of Officer Harrington when he made the statements he seeks to suppress. The defendant knew other inmates could hear his conversation, and he was aware of the intercom in his cell and that he could be overheard if it was turned on. Under these circumstances the defendant may be held to have assumed that his conversations with other inmates might be monitored or overheard, and accordingly, the defendant had no reasonable expectation of privacy as to the statements made to his fellow inmates.

Based on the foregoing, the district court's finding that the defendant's statements were oral communications within the meaning of §§ 86-701 through 86-712 and were therefore inadmissible was erroneous, and its order granting the defendant's motion to suppress must be reversed.

REVERSED.