**William WEEDON, Jr., Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 234, 1993.**

Supreme Court of Delaware.

Submitted: Aug. 31, 1994.
Decided: Sept. 23, 1994.

Eugene J. Maurer, Jr., Wilmington, for appellant.

James W. Adkins and Gary A. Myers (argued), Dept. of Justice, Georgetown, for appellee.

Before VEASEY, C.J., WALSH and HOLLAND, JJ.

VEASEY, Chief Justice:

In this appeal we consider whether the Superior Court erred in: (1) admitting certain testimony the State elicited from Jeanine Weedon ("Mrs. Weedon"), the wife of defendant below-appellant William Weedon, Jr. ("Weedon"); (2) admitting certain hearsay statements elicited from a police officer; and (3) whether the trial court erred in excluding evidence Weedon proffered to discredit the State's motive theory. For the reasons stated below, we hold that Weedon waived the marital communication privilege, did not properly preserve his hearsay objection and that the trial court did not abuse its discretion in excluding evidence offered by Weedon. Therefore, we **AFFIRM** his conviction in the Superior Court.

## I. FACTS

In the early morning hours of October 10, 1992, Ronald Ward ("Ward") was attacked while sleeping in his house in Lewes, Delaware. Ward did not see who attacked him. As a result of the attack, Ward received severe injuries to his face, skull, arm and fingers. Responding to a call by Teresa Johnson, Ward's sister, Corporal Darrell V. Mifflin ("Mifflin") was the first officer to arrive on the scene. As part of his investigation, Mifflin took fingerprint samples, none of which matched those of Weedon or his co-defendant below, John M. Smith ("Smith"). Mifflin also interviewed Dale Carter ("Carter") and Curtis Wells ("Wells"), both of whom Ward cast as suspects.[1] Notwithstanding Weedon's unsuccessful objection to

---

1. Neither Carter's nor Wells' fingerprints matched those taken from the crime scene.

the State's inquiry of Mifflin as to his findings regarding Carter and Wells, Mifflin was allowed to testify to these conversations.

Later that morning, Officer Gilbert Clampitt ("Clampitt"), of the Lewes police, stopped a blue Chevrolet Nova for a speeding violation. Smith and Weedon identified themselves, respectively, as the driver and passenger/owner of the vehicle. Clampitt noticed two baseball bats inside the vehicle, one of which was cracked, and made inquiry. Weedon informed Clampitt that the two bats were inadvertently left in the compartment of the vehicle after their earlier use at his son's baseball practice. Clampitt ticketed Smith for speeding but allowed the two to proceed.

The police suspected Weedon after receiving a phone call from Mrs. Weedon in early November, 1992, in which conversation she recounted the events of the first half of October, 1992.[2] On October 6 Weedon physically assaulted their children. Mrs. Weedon obtained an ex parte restraining order barring Weedon from returning to their residence and separated from Weedon for the eighth time. On October 7, a Maryland child welfare representative arrived at the Weedon house to report that their daughter, Kasey Ann, had complained that their son, Billy, had molested her. On October 9 Billy in turn reported that Ward had sexually molested him in 1991. The child welfare representative immediately removed Billy from the Weedon residence to place him in a foster home.

Between 3:00 and 5:00 p.m. on October 9, Weedon arrived at the Weedon residence where his wife apprised him of the unfortu-nate developments relating to their children. Upon learning of Billy's accusation, Weedon shouted, "I'll go down there and kill [Ward]! I'll kill him!" Mrs. Weedon, equally angered, responded "You should." Another daughter, Carly, was present in the residence during this exchange. Weedon warned Mrs. Weedon that if she told anybody of his intentions, "[he] would take care of [her].".

On October 10 between 10:00 and 10:30 a.m., Weedon returned to the Weedon home, where he told Mrs. Weedon the following: he and a friend (later identified as Smith) had gone to Ward's house, donned socks for gloves, worn masks over their faces and had beaten Ward with two baseball bats; they had left Ward and his house in a bloody state and were unsure whether Ward was still alive; Weedon stated that "he hoped he could trust [Mrs. Weedon] being his wife not to tell anyone." Notwithstanding, he immediately told several neighbors that he had assaulted Ward earlier that morning.[3]

Upon Mrs. Weedon's recitation of the above events, the Delaware police pieced together what had occurred in the early hours of October 10, eventually leading to a five-count indictment of Weedon and Smith in Sussex County on January 11, 1993. A jury trial commenced on April 26, 1993, in the Superior Court. Unlike Smith, Weedon did not testify on his own behalf. Weedon, as part of his defense, unsuccessfully sought admission of evidence regarding Ward's alleged prior showing of sexually explicit material to Billy. The trial ended on May 4, 1993, with the jury finding Weedon and Smith guilty of Attempted Murder First Degree,[4] Burglary First Degree,[5] Possession of a Deadly Weapon During Commission of a Fel-

---

2. The Weedon marriage was plagued with acrimony. Mrs. Weedon did not, however, call the Delaware police until early November, 1992, when the marital distress between Weedon and Mrs. Weedon reached its apogee—Weedon physically assaulted Mrs. Weedon, including threatening her with a knife. This incident was the denouement of thirteen disharmonious years, during which Mrs. Weedon had filed and subsequently withdrawn two divorce petitions, lodged nine criminal complaints, separated from Weedon on eight separate occasions and had successfully sought several restraining orders.

3. Mrs. Weedon gave hearsay testimony, to which Weedon objected, relating to Weedon's October 10 disclosure of his beating of Ward to neighbors Michelle Falahee and JoEllen Trader. Also, Michael Falahee ("Falahee") testified in court that Weedon told him that he had "taken care" of Ward.

4. 11 *Del.C.* § 636(a)(1).

5. *Id.* § 826(1).

ony[6] and Conspiracy First Degree.[7] Weedon was sentenced on June 18, 1993, to a total incarceration period of 22 years. He filed a timely appeal.[8]

Weedon raises three arguments on appeal. First, Weedon argues that the trial court erred in admitting Mrs. Weedon's testimony regarding the October 10 conversation over Weedon's marital communication privilege objection.[9] Second, he contends that the trial court erred in admitting Mifflin's hearsay testimony relating to Carter and Wells. Finally, Weedon argues that the trial court abused its discretion in excluding evidence relating to his alleged non-violent response upon learning of Ward's depiction of sexually explicit material to Billy. Finding no merit in any of Weedon's contentions, we affirm the judgment of the Superior Court.

## II. THE MARITAL COMMUNICATION PRIVILEGE AND WAIVER THEREOF

Weedon's first argument is that the trial court erred in allowing Mrs. Weedon to testify regarding his conversation with her on October 10, 1992, during which he described in detail his assault on Ward. He argues that this conversation was protected by the marital communication privilege, D.R.E. 504.[10] He further contends that his subsequent disclosure to Falahee, among others, that he "took care" of Ward did not constitute waiver of the marital privilege because the substance of his conversation with Mrs. Weedon was quantitatively and qualitatively different from his disclosure to third parties. The State responds that, though Weedon's subsequent disclosures do not squarely extinguish the privilege under D.R.E. 504, the rule's underlying policies mandate a finding of waiver.

■ Disclosure by a speaker-spouse to a third party of subject matter that parallels that of an earlier, otherwise privileged marital communication constitutes waiver. D.R.E. 510 states in relevant part: "A person upon whom these rules confer a privilege against disclosure waives the privilege if he ... voluntarily discloses ... any significant part of the privileged matter...." D.R.E. 510. Interpreting a verbatim counterpart to D.R.E. 510, the court in *State v. Wilkinson,* 136 N.H. 170, 612 A.2d 926 (1992), confronted the issue before this Court—namely whether a subsequent disclosure of the substance of an otherwise protected marital communication constitutes waiver, *id.,* 136 N.H. 170, 612 A.2d at 929. In *Wilkinson,* on the evening of the incident, May 29, 1989, the defendant's wife prodded him into admitting to her that he had hit someone and that the impact had caused visible damage to their automobile.[11] In April 1990 the defendant related the same incident to one of his friends, as well as another witness. *Id.,* 136 N.H. 170, 612 A.2d at 927–29. Relying on New Hampshire Rule

---

6. *Id.* § 1447(a).

7. *Id.* § 513(1). The fifth count, Criminal Mischief, *id.* § 811(a)(1), was nolle prossed by the State prior to trial.

8. In Smith's companion appeal, this Court, in an opinion issued contemporaneously herewith, reversed Smith's convictions and remanded his case to the Superior Court for a new trial on the ground that Mrs. Weedon's testimony which recounted her husband's October 10 statements to her was inadmissible under D.R.E. 804(b)(3) as to Smith and the trial court committed plain error in so admitting such statements. *Smith v. State,* Del.Supr., Veasey, C.J. (1994) (OPINION), 647 A.2d 1083.

9. Though Weedon originally claimed that the October 9 conversation was also privileged, in his appellate brief and during oral arguments, Wee-

don withdrew his privilege claim as to this conversation.

10. D.R.E. 504 states in relevant part:

    **(a) Definition.** A communication is confidential if it is made privately by any person to his or her spouse and is not intended for disclosure to any other person.

    \*    \*    \*    \*    \*    \*

    **(d) Exceptions.** There is no privilege under this rule in a proceeding in which 1 spouse is charged with a wrong against the person or property of (1) the other, (2) a child of either, (3) a person residing in the household of either, or (4) a third person committed in the course of committing a crime against any of them....

D.R.E. 504(a) & (d).

11. Though the couple was married at the time of this communication, they subsequently separated.

of Evidence 510, the *Wilkinson* court held that, though the May 29 conversation was initially privileged, the defendant's subsequent disclosure of that conversation to a third person constituted waiver of the privilege. Finding no error in the trial court's admission of the communication, the court affirmed defendant's hit-and-run conviction. *Id.,* 136 N.H. 170, 612 A.2d at 931. We find that *Wilkinson* is persuasive and applicable here.

In the instant case, the October 10, 1992, conversation between Weedon and his wife falls squarely within the language of D.R.E. 504 as a privileged marital communication which does not fall within any of the exceptions stated in that rule. *See* D.R.E. 504(a) & (d). The acrimonious nature of their marital relationship does not affect this result. *See, e.g., Commonwealth v. Clark,* 347 Pa.Super. 128, 500 A.2d 440, 442–43 (1985).

Weedon waived the privilege, however, by his subsequent actions. In disclosing to third parties, including Falahee, that he "took care" of Ward, Weedon repeated in substance· (absent details) that which he had earlier told his wife to keep secret. Under the *Wilkinson* court's persuasive explication of D.R.E. 510's counterpart, such subsequent disclosure constituted a waiver of the marital communication privilege. *See* D.R.E. 510; *Wilkinson,* 136 N.H. 170, 612 A.2d at 931; *Model Code of Evidence* 218 cmt. (1942) (elucidating in comment to an early waiver provision that "[t]he theory of the Rule is that a spouse ought not to be able to select for disclosure from among communications upon a given subject those which he deems favorable, and to suppress the rest[ ]"); *see also Dutton v. State,* Del.Supr., 452 A.2d 127, 145 (1982) (defendant's subsequent disclosure of matter communicated to him in an attorney-client context constituted waiver of the attorney-client privilege). *But see Clark,* 347 Pa.Super. 128, 500 A.2d at 442–43 (subsequent disclosure to a third person by the speaker-spouse of a conversation that other-

wise falls within the marital communication privilege does not constitute waiver); *Commonwealth v. Ferri,* 410 Pa.Super. 67, 599 A.2d 208, 211–12 (1991), *cert. denied,* — U.S. —, 114 S.Ct. 1189, 127 L.Ed.2d 540 (1994) (extending *Clark*'s nonwaiver rule to the attorney-client privilege).

Further, D.R.E. 510 explicitly states that voluntary disclosure of "*any significant part* [of an otherwise privileged marital communication]" constitutes waiver. D.R.E. 510 (emphasis added). Weedon's argument that there was no waiver because his later communications were sparser in detail than the earlier one with his wife is unpersuasive. Weedon's later communications conveyed the significant part of his earlier statement to his wife, namely Weedon's perpetration of the Ward assault. The Court holds that Weedon waived the marital communication privilege and thus finds no merit in his first claim on this appeal.

## III. ADMISSION OF HEARSAY TESTIMONY

Weedon argues that the trial court erred in allowing Mifflin to testify as to conversations he had with Carter and Wells relating to their dealings with Ward and their presence at the Ward residence on October 10, 1992. Weedon argues that such testimony was inadmissible hearsay and should have been excluded. At trial, however, Weedon raised only one preliminary objection—that the State's elicitation of Mifflin's findings regarding Carter and Wells called for a conclusion. He did not invoke a hearsay objection.

An objection not properly preserved at trial is generally waived for purposes of appeal. A party making an objection to the introduction of evidence must specify a proper basis for exclusion, *see* D.R.E. 103(a)(1),[12] and a failure to do so constitutes waiver for appellate review purposes, *Weber v. State,* Del.Supr., 457 A.2d 674, 680 n. 7 (1983). Even where an objection is raised, if the argument for exclusion

---

12. D.R.E. 103(a)(1) states, in relevant part: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection[.]" D.R.E. 103(a)(1).

on appeal is not the one raised at trial, absent plain error, the new ground is not properly before the reviewing court. Supr. Ct.R. 8;[13] *Wright v. State*, Del.Supr., 374 A.2d 824, 830–31 (1977). Here, Weedon may not raise a hearsay argument to Mifflin's testimony because his objection in the Superior Court was predicated on a different ground. Finding no extraordinary reasons for excusing Weedon's failure to raise the hearsay argument, the Court holds that the hearsay issue was not properly preserved for review, and the admission of the Mifflin testimony did not constitute plain error.[14]

## IV. EXCLUSION OF PROFFERED EVIDENCE RELATING TO VICTIM'S PRIOR CONDUCT

In his final claim, Weedon argues that the trial court abused its discretion in precluding cross-examination of Ward and Mrs. Weedon regarding an alleged May 1992 Child Protective Services investigation of Ward for his alleged depiction of sexually explicit material to Billy. Weedon claims that such evidence was relevant because his purported magnanimous response to the May 1992 incident could have rebutted the State's theory that the subject attack on Ward was motivated by anger. The trial court sustained the State's objection to such questioning, reasoning that its probative value was substantially outweighed by its prejudicial effect, given the collateral nature of such evidence.

A trial court's balancing of probative value versus prejudicial effect under D.R.E. 403[15] is a matter within the discretion of the trial judge, who had a first-hand opportunity to consider all relevant factors. *Williams v. State*, Del.Supr., 494 A.2d 1237, 1241 (1985). The trial court's ruling should not be set aside absent an abuse of discretion. *Pope v. State*, Del.Supr., 632 A.2d 73, ·

79 (1993). The Court holds that the Superior Court did not abuse its discretion in excluding Weedon's proffered evidence. Thus his final contention lacks merit.

We therefore **AFFIRM** Weedon's conviction.

---

13. Delaware Supreme Court Rule 8 states: "Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented." Supr.Ct.R. 8.

14. Contrast this with the Court's finding in *Smith, supra* n. 8, that it was plain error to allow Mrs. Weedon to testify regarding Weedon's statement to her implicating Smith.

15. D.R.E. 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." D.R.E. 403.