STATE of Delaware,

v.

**Kevin M. HOWARD and Elizabeth K. Rodriguez, Defendants.**

CR. A. Nos. IK98–02–005, IK98–04–0110, IK98–02–003 IK98–02–004, IK98–04–0111, IK98–04–0112, IK98–02–0332 and IK98–02–0333.

Superior Court of Delaware, Kent County.

Submitted: July 24, 1998.

Decided: Oct. 19, 1998.

Stuart E. Sklut, Deputy Attorney General, Department of Justice, Wilmington, for the State of Delaware.

Eugene J. Maurer, Jr., Eugene J. Maurer, Jr., P.A., Wilmington, for Defendant Kevin M. Howard.

Charles E. Whitehurst, Young, Malmberg, Whitehurst & Curley, P.A., Dover, for Defendant Elizabeth K. Rodriguez.

## MEMORANDUM OPINION

COOCH, J.

### I. INTRODUCTION

Elizabeth K. Rodriguez (Rodriguez) and her husband, Kevin M. Howard (Howard),[1] were arrested in Kent County, Delaware, on January 9, 1998, on various drug and drug-related charges. In April 1998, a grand jury indicted Rodriguez and Howard on one count each of Criminal Solicitation Second Degree (11 *Del. C.* § 502); Possession of a Narcotic Schedule II Controlled Substance (Cocaine) (16 *Del. C.* § 4753); Maintaining a Vehicle for Keeping Controlled Substances (16 *Del. C.* § 4755(a)(5)); and Conspiracy Second Degree (11 *Del. C.* § 512).

Rodriguez filed a motion to suppress post-arrest conversations between her and Howard that took place in an interview room of Troop 3 of the Delaware State Police that were recorded on videotape by the police without her apparent knowledge.[2] Rodriguez seeks to suppress the tape containing these oral communications upon the grounds that (1) the surreptitious recording of the oral communications between her and her husband violated 11 *Del. C.* § 1336 (the "Wiretap Statute"), which implicates a Fourth Amendment "reasonable expectation of privacy" analysis, and (2) the oral communications were otherwise protected by the marital communications privilege.[3] The State contends that Rodriguez had no "reasonable expectation of privacy," as outlined in *Katz v. United States,*[4] in those post-arrest conversations with her husband that took place in the police interview room. The State further argues that the marital communications privilege does not protect such communications when legitimately overheard by third persons, such as the police.

Having reviewed the parties' submissions and the applicable case law, this Court holds that Rodriguez had a constitutionally protected "reasonable expectation of privacy" because of her marital relationship with Howard which requires suppression of the couple's conversations that took place in the police interview room. The Court therefore need not reach the issue of whether the marital communications privilege applies.[5] Rodriguez' motion is GRANTED.

---

1. Rodriguez and Howard are, and at all times relevant to these events were, husband and wife.

2. Howard has not sought to suppress these recorded conversations.

3. D.R.E. 504. **Husband-wife privilege.**

 (a) *Definition.* A communication is confidential if it is made privately by any person to his or her spouse and is not intended for disclosure to any other person.

 (b) *General rule of privilege.* Any party or witness in any proceeding has a privilege to prevent his spouse from testifying as to any confidential communication between himself and his spouse.

 (c) *Who may claim the privilege.* The privilege may be claimed by the party or witness or by the spouse on behalf of the party or witness. The authority of the spouse to do so is presumed.

 (d) *Exceptions.* There is no privilege under this rule in a proceeding in which 1 spouse is charged with a wrong against the person or property of (1) the other, (2) a child of either, (3) a person residing in the household of either, or (4) a third person committed in the course of committing a crime against any of them. There is no privilege under this rule in any proceeding brought pursuant to Title 13 of the Delaware Code, or Chapter 9 of Title 10 of the Delaware Code or when the interest of the spouses is adverse.

 (e) *Testimony of wife or husband.* A wife or husband may testify for or against each other in any court of this State.

4. 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

5. Both parties have agreed that determination of the "reasonable expectation of privacy" issue would be dispositive of the entire motion, in that (1) a finding by this Court that Rodriguez had a "reasonable expectation of privacy" (which this Court does find) renders moot the marital privilege issue or, alternatively, (2) a finding that Rodriguez did not have a "reasonable expectation of privacy" would obviate the need to analyze D.R.E. 504 since, here, a third-party videotaping police officer—not a spouse—would be testifying as to the conversations between Rodriguez and Howard, the parties having in effect waived the privilege. *See Weedon v. State*, Del. Supr., 647 A.2d 1078 (1994).

## II. FACTS

At a suppression hearing held on July 24, 1998, the parties stipulated to the specific following facts in lieu of live testimony which, in addition to the videotape recording of Rodriguez' and Howard's conversations, constitute the entire factual record of the suppression hearing:

1. Ms. Rodriguez and Mr. Howard were arrested at the Burger King in Dover on 1/9/98.

2. They were separately taken to Troop 3 in Woodside.

3. Once at Troop 3, they were placed in separate rooms.

4. They were kept apart for 1.5 hours.

5. Mr. Howard gave a statement. Ms. Rodriguez was not questioned.

6. Ms. Rodriguez and Mr. Howard were then placed together in an interview room at Troop 3. Ms. Rodriguez was brought to the room where Mr. Howard was.

7. The police officers left the room leaving Mr. Howard and Ms. Rodriguez alone. The door was locked from the outside. The officers knocked whenever reentering the room.

8. Mr. Howard is an experienced criminal lawyer who has represented drug defendants previously.[6]

The police monitored the interview room with an apparently hidden video recorder, recording statements made over a period of about an hour and fifteen minutes by Rodriguez and Howard.

The issue presented to this Court is whether the provisions of Delaware's Wiretap Statute (which implicates a reasonable expectation of privacy analysis under the Fourth

6. Stipulation of the parties (7/24/98).

7. 18 U.S.C. § 2510 *et seq.*

8. 11 *Del. C.* § 1336(b)(1).

9. 11 *Del. C.* § 1336(a)(11).

10. 11 *Del. C.* § 1336(a)(9). This language is modeled after 18 U.S.C. § 2510(2), into which Congress purposefully incorporated the "reasonable expectation of privacy" test enunciated in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507,

Amendment to the United States Constitution) render inadmissible the videotaped conversations of this married couple which took place immediately after their arrest in a police station interview room because Rodriguez had a reasonable expectation of privacy in those conversations.

## III. DISCUSSION

### A. *The Wiretap Statute*

Delaware's Wiretap Statute, which parallels the federal wiretap statute,[7] prohibits the wilful interception of wire and oral communications.[8] The statute defines "wire communications" as those made

> in whole or in part through the use of facilities for the transmission of communications by wire, cable or other like connection between the point of origin and the point of reception furnished or operated by a telephone, telegraph or radio company for hire as a communication common carrier.[9]

"Oral communications," on the other hand, are those

> uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation.[10]

The communications at issue here are not wire communications, since they simply passed from one person to another without the aid of a "wire, cable, or other like connection." [11] The issue thus becomes whether these conversations are protected oral communications as that term is defined by 11 *Del. C.* § 1336(a)(9). Resolution of that issue turns on a "reasonable expectation of priva-

19 L.Ed.2d 576 (1967). *See* S.Rep. No. 1097, 90th Cong., 2d Sess. 66 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2163, 2178 (recognizing that definition of oral communication reflects existing law, citing *Katz, supra* ). *See also* Christopher K. Murphy, *Electronic Surveillance,* Twenty–Sixth Annual Review of Criminal Procedure, 85 Geo. L.J. 920, 938 n. 468 (1997); Paul C. Giannelli & Francis A. Gilligan, *Prison Searches and Seizures: "Locking" the Fourth Amendment Out of Correctional Facilities,* 62 U. Va. L.Rev. 1045, 1089 (1979).

11. 11 *Del. C.* § 1336(a)(11).

cy" analysis derived from Fourth Amendment jurisprudence.

### 1. Reasonable Expectation of Privacy

 The analysis of whether or not a reasonable expectation of privacy exists, whether in the context of an alleged violation of the Wiretap Statute or of the Fourth Amendment, derives from the rule set forth in Justice Harlan's concurring opinion in *Katz v. United States*.[12] That rule, which has been universally adopted by subsequent cases as the prevailing rule of law, states that a "reasonable expectation of privacy" in conversations that may be protected from interception by individuals not parties to the conversation exists only where "a person... exhibit[s] an actual (subjective) expectation of privacy and [where] that... expectation [is] one that society is prepared to recognize as [objectively] 'reasonable.' "[13] Both prongs must be met for a constitutional violation to occur.[14] The first prong of the test involves an issue of fact, the second an issue of law.[15]

### a. Rodriguez Exhibited a Subjective Expectation of Privacy.

 In addressing the first prong of the *Katz* test, the Court must decide whether Rodriguez exhibited a subjective expectation of privacy such that the conversations with her husband which took place in a police interview room would be private. The brief stipulated facts do not squarely address the issue of her subjective reasonable expectation of privacy. Nevertheless, it is important to note that the interview room door was locked from the outside, and the police officers knocked "whenever reentering the room." It appears from the tape that, upon most instances of the officers' reentry, Rodriguez and Howard immediately terminated their conversation.

The videotape suggests other facts that bear on the issue of Rodriguez' possible subjective expectation of privacy. For example, there is a noticeable lack of any visible indication by Rodriguez and Howard that they were being videotaped.[16] Furthermore, several times throughout the tape Rodriguez and Howard apparently whispered to each other. Coupled with police officers' audible voices coming from outside the interview room, the occasional whispering suggests that the couple intended that their conversations not be overheard, *i.e.*, that they remain private. Howard does say to Rodriguez at one point that an informant was probably wired at the time of the original alleged drug transaction, but any suspicion by Howard (and communicated to Rodriguez) that an informant was wired is not enough to impute to Rodriguez knowledge that the police interview room was monitored.[17] The videotape is also replete with discussions of private and personal matters, and shows occasional physical embraces between the two.

Based upon Rodriguez' apparent lack of knowledge of the videotaping, the conclusion should be drawn that Rodriguez did have a subjective expectation of privacy in the communications in part because the State has not

12. 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

13. *Id.* at 361, 88 S.Ct. 507 (Harlan, J., concurring). *See also U.S. v. McKinnon*, 11th Cir., 985 F.2d 525 (1993), *cert. denied*, 510 U.S. 843, 114 S.Ct. 130, 126 L.Ed.2d 94 (1993) (applying same "reasonable expectation of privacy" test for purposes of Title III of Omnibus Crime Control and Safe Streets Act, after which 11 *Del. C.* § 1336 is patterned).

14. *Id.*

15. *See United States v. Clark*, 8th Cir., 22 F.3d 799, 801 (1994).

16. *Cf. Ex parte Graves*, Tex.App. 1st Dist., 853 S.W.2d 701, 705 (1993) (holding that no reasonable expectation of privacy existed in jailhouse conversations held between defendant and alleged accomplice when defendant was or should have been aware of monitoring system since speaker was visible on cell room wall).

17. That Howard was stipulated by the parties to be an "experienced criminal lawyer," without more, does nothing to change this analysis. The Court cannot infer from this general stipulated "fact" that Rodriguez knew or should have known that the Delaware State Police at Troop 3 videotaped conversations of married couples (or at least of Rodriguez and Howard) held in its interview room, if even such videotaping was a regular practice at Troop 3. No facts were developed at the hearing that Rodriguez either knew or should have known of any such police policy.

shown that she was aware of the possibility that her conversations with Howard would be videotaped.[18] Based on the totality of these circumstances,[19] this Court finds that these facts demonstrate that Rodriguez displayed an actual subjective expectation of privacy .[20]

b. *Society Recognizes an Objective Reasonable Expectation of Privacy in Marital Communications Held in a Police Interview Room in Certain Cases.*

■ As to the second prong of *Katz* (the objectively reasonable expectation of priva-cy), this Court must determine if Rodriguez' expectation of privacy in marital communications that took place in a police interview room was one that society is prepared to recognize as reasonable. Courts have delineated the parameters of persons' reasonable expectation of privacy in their conversations. For example, courts have generally found no "reasonable expectation of privacy" for overheard or monitored conversations in police cars,[21] police interview rooms,[22] or in prisons.[23] Thus, it has been said that "[a]s a rule, [surreptitiously recorded or overheard]

18. See generally Eric H. Miller, Annotation, *Permissible Warrantless Surveillance, Under State Communications Interception Statute, by State or Local Law Enforcement Officer or One Acting in Concern with Officer,* 27 A.L.R.4th 449 § 3 (citations omitted).

19. See *Chimel v. California,* 395 U.S. 752, 765, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (holding that questions of reasonableness depend upon "the facts and circumstances—the total atmosphere of the case [citation omitted], . . . [which] must be viewed in the light of established Fourth Amendment principles"); *U.S. v. Albarado,* 2nd Cir., 495 F.2d 799, 804 (1974) (holding that the reasonableness inquiry is based upon the "totality of the circumstances" in determining whether or not a search was reasonable).

20. See generally *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (finding that no actual subjective expectation of privacy existed in numbers dialed from home telephone when *Katz* subjective prong applied); *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (finding that overnight guest had actual expectation of privacy in host's home when *Katz* subjective prong applied).

21. *U.S. v. Clark,* 8th Cir., 22 F.3d 799, 801–02 (1994) (holding that defendant did not have a reasonable expectation of privacy in statements made to companion while seated in police car); *U.S. v. McKinnon,* 11th Cir., 985 F.2d 525, 528 (1993), *cert. denied,* 510 U.S. 843, 114 S.Ct. 130, 126 L.Ed.2d 94 (1993) (finding that no reasonable or justifiable expectation of privacy existed for conversations held between unrelated defendants as they sat in the back seat of a patrol car); *Gross v. Taylor,* 1997 WL 535872 (E.D.Pa.1997) (finding that police officers' expectation of privacy was unreasonable when they knew recording equipment would be installed in patrol cars and such equipment was visible); *U.S. v. Sallee,* 1991 WL 352613 at *2 (N.D.Ill.1991) (finding no reasonable expectation of privacy in conversations between defendant and companions which were videotaped as they sat in the back seat of patrol car); *see also* CLIFFORD S. FISHMAN & ANNE T. MCKENNA, WIRETAPPING AND EAVESDROPPING § 2:21

(2d ed.1995) (citations omitted); Eric H. Miller, Annotation, *supra* n. 18 § 4 (citations omitted).

22. *Donaldson v. Superior Court of Los Angeles County,* Cal.Supr., 35 Cal.3d 24, 196 Cal.Rptr. 704, 672 P.2d 110 (1983) (finding that no reasonable expectation of privacy existed in conversations between brothers that took place in police interview room); *People v. Elwood,* Cal.App.2d Dist., 199 Cal.App.3d 1365, 245 Cal.Rptr. 585 (1988) (finding that no justifiable expectation of privacy existed in defendant's statements made to himself in police interview room that were recorded by police); *In re Joseph A.,* Cal.App.2d Dist., 30 Cal.App.3d 880, 106 Cal.Rptr. 729, 732 (1973) (recognizing that while an uncle and nephew had no reasonable expectation of privacy in their oral communications which took place in an interrogation room located in police station, conversations between individuals who occupy privileged relationships, *i.e.,* husband and wife, are exempted from the general rule that individuals have no expectation of privacy in oral communications which take place within a police station); *People v. Blair,* Cal.App. 4th Dist., 2 Cal.App.3d 249, 82 Cal.Rptr. 673, 676–77 (1969) (finding that no expectation of privacy existed in conversations between defendant and his brother when defendant was told twice that police interview room was "bugged").

23. *Lanza v. New York,* 370 U.S. 139, 143, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962) (holding that no reasonable expectation of privacy existed in a prison visitor room where conversations took place between brothers and were surreptitiously recorded by state officials); *Angel v. Williams,* 8th Cir., 12 F.3d 786, 790 (1993) (finding that police officer had no reasonable expectation of privacy regarding communication with prisoner in public jail); *U.S. v. Harrelson,* 5th Cir., 754 F.2d 1153, 1169 (1985), *reh'g denied,* 5th Cir., 766 F.2d 186 (1985), *cert. denied,* 474 U.S. 908, 106 S.Ct. 277, 88 L.Ed.2d 241 (1985), *cert. denied,* 474 U.S. 1034, 106 S.Ct. 599, 88 L.Ed.2d 578 (1985) (finding that, based on case law and legislative history, married couple had no reasonable expectation of privacy while conversing in jail since defendant testified he had personal knowledge of prison eavesdropping techniques);

arrestees' conversations are fair game. The underlying theory... is that arrestees lack an expectation [protected by the Fourth Amendment] that what they say will be free from monitoring."[24] Therefore, arrestees will ordinarily have no reasonable expectation of privacy in a police interview room, such as the one at Troop 3 of the Delaware State Police in Kent County.

However, the fact that the subjects of the videotaped conversations at issue in this case were married to each other significantly changes the analysis of this issue. The parties' marital status is important since Delaware has chosen to provide evidentiary protection to communications between married persons.[25] Both the State and Rodriguez have apparently assumed that the conversations between Rodriguez and Howard were in fact marital communications. The Court makes the same assumption, but without reaching the issue.[26]

Importantly, Delaware's Wiretap Statute, 11 *Del. C.* § 1336(j), endorses the marital privilege contained in D.R.E. 504, providing that "no ... privileged ... oral communication intercepted in accordance with, or in violation of, this section shall lose its privileged character."[27] In *Lanza v. New York*,[28] the United States Supreme Court held that the protection afforded by the Fourth Amendment against unreasonable searches and seizures did not extend to a jail.[29] Nevertheless, *Lanza* recognized the special place that privileged relationships occupy and their link to reasonable expectations of privacy. *Lanza* stated that "it may be assumed that even in a jail, or perhaps especially there, the relationships which the law has endowed with particularized confidentiality must continue to receive unceasing protection...."[30] Delaware has applied *Lanza's* "particularized confidentiality" to the marital relationship also by creating an evidentiary privilege for marital communications.[31]

---

**24.** Fishman & McKenna, *supra* n. 21 § 7:28 (citations omitted).

**25.** *See* D.R.E. 504(a) ("[a] communication is confidential if it is made privately by any person to his or her spouse and is not intended for disclosure to any other person").

**26.** The State also argues that the undisclosed but, in its view, constitutionally permissible recording of these conversations constituted a waiver by the parties of any marital privilege but, as stated earlier (see n. 5), the Court need not reach this issue.

**27.** 11 *Del. C.* § 1336(j). Since, as stated above, the Delaware Wiretap Statute is patterned after the federal wiretap statute, it is especially informative to consider the legislative history of the federal statute. *See* S.Rep. No. 1097, 90th Cong., 2d Sess. 66 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2189 ("[t]raditionally, the interest of truth in the administration of justice has been subordinated in the law to the interest of preserving privileged communications where [certain] relationships have been involved: ... husband-wife.... [18 U.S.C. § 2517(4)] is intended to vary the existing law only to the extent that an otherwise privileged communication does not lose its privileged character because it is intercepted by a stranger"). *See also* 18 Pa. C.S.A. § 5711 ("[n]o otherwise privileged com-

munication intercepted in accordance with, or in violation of, the provisions of this chapter shall lose its privileged character."); *U.S. v. Geller*, 560 F.Supp. 1309, 1326 (E.D.Pa.1983), *aff'd*, 3rd Cir., 745 F.2d 49 (1984), *cert. denied*, 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985) (holding that 18 Pa.C.S.A. § 5711 and its federal counterpart, 18 U.S.C. § 2517(4), prevent the government from introducing recordings of communications between spouses resulting from "tap" on third party's telephone).

**28.** 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962).

**29.** *Id.* at 143, 82 S.Ct. 1218. *See also* n. 23 *supra.*

**30.** 370 U.S. 139, 143–44, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962). *See also People v. Von Villas*, Cal.App.2d Dist., 11 Cal.App.4th 175, 15 Cal.Rptr.2d 112, 133 (1992), *cert. denied*, 510 U.S. 838, 114 S.Ct. 118, 126 L.Ed.2d 83 (1993) (recognizing that *Lanza's* holding that confidential relationships would "continue to receive unceasing protection despite the jailhouse setting"); *In re Joseph A.*, *supra* at n. 22. *Cf., e.g.*, *U.S. v. Geller*, *supra* n. 27 (intercepted wire communications between spouses suppressed since such communications were made in confidence and were privileged).

**31.** D.R.E. 504. *See also Katz v. United States*, 389 U.S. at 351, 88 S.Ct. 507 (holding that the Fourth Amendment "protects people, not places").

However, not every conversation between an arrested husband and wife in a police station interview room in Delaware will necessarily be suppressed on the grounds that it was recorded in contravention of the married couple's, or one of their's, "reasonable expectation of privacy." The relatively sparse record in this case does not indicate any knowledge of Rodriguez about Troop 3 monitoring procedures. There is no evidence that she was told of the possibility of such monitoring. No testimony was adduced regarding the noticeability (or lack thereof) of the video camera. No testimony was introduced to show that interests of police station security or of protection of the public warranted the undisclosed taping of married couples' oral communications.[32] In another case and under different facts, such facts might justify a conclusion that there was no violation of a married couple's ."reasonable expectation of privacy" by police listening to and/or recording post-arrest marital communications that took place in a police interview room. However, under the stipulated facts of this case, this Court concludes that Rodriguez had a "reasonable expectation of privacy" in conversations with her husband[33] that took place in the Troop 3 police interview room.[34]

32. *People v. Elwood*, Cal.App. 2nd Dist., 199 Cal. App.3d 1365, 245 Cal.Rptr. 585, 588 (1988) (noting that State did not introduce any evidence regarding the purpose behind monitoring defendant's statements spoken in an interview in answer to defendant's contention that his statements were protected unless monitored for institutional security purposes). *See generally U.S. v. Hearst*, 9th Cir., 563 F.2d 1331, 1345–46 (1977), *reh'g denied*, 9th Cir., 573 F.2d 579 (1978), *cert. denied*, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978) (finding that surreptitiously recording conversations between prisoner and visitor does not violate prisoner's right to privacy when confronted with state's "justifiable purpose of imprisonment or prison security"); *State v. Hauss*, App., 142 Ariz. 159, 688 P.2d 1051, 1054–55 (1984) (holding that, in this case where police were concerned that while couple was in an interview room they would pass a weapon, discuss escape plans or destroy evidence, once the "government establishe[d] that its intrusion [was] for a justifiable purpose of imprisonment or prison security the Fourth Amendment question [was] essentially resolved in its favor"); *People v. Gallego*, Cal. Supr ., 52 Cal.3d 115, 276 Cal.Rptr. 679, 802 P.2d 169, 194 (1990), *cert. denied*, 502 U.S. 924, 112 S.Ct. 337, 116 L.Ed.2d 277, *reh'g denied*, 502 U.S. 1009, 112 S.Ct. 650, 116 L.Ed.2d 667 (1991) (reiterating that the statements found in *DeLancie* and *Donaldson* that police may monitor conversations of pretrial detainees only to ensure security and the public's protection, but not to discover information that may be used against such detainees at trial); *Donaldson v. Superior Court of Los Angeles County*, Cal.Supr., 35 Cal.3d 24, 196 Cal. Rptr. 704, 672 P.2d 110, 116 (1983) (recognizing that *DeLancie* implied that "secret monitoring of conversations between detainees and visitors, 'undertaken for the purpose of gathering evidence for use in criminal proceedings, rather than to maintain the security of the jail,' was unlawful"); *DeLancie v. Superior Court of San Mateo County*, Cal.Supr., 31 Cal.3d 865, 183 Cal.Rptr. 866, 647 P.2d 142, 147, 150 (1982) (finding that a cause of action existed to challenge existence of surveillance system used for the purpose of gathering evidence but not for purpose of jail security or of protecting the public).

33. As the Court noted in its discussion of the first prong of *Katz*, *supra* n. 17, any knowledge that Howard may have had about police monitoring procedures practiced at Troop 3 by virtue of his experience as a criminal lawyer cannot be imputed to Rodriguez.

34. A California Court of Appeals was faced with a quite similar situation in *Robinson v. Superior Court of Sacramento County*, Cal.App. 3rd Dist., 105 Cal.App.3d 249, 164 Cal.Rptr. 389 (1980) (removed from official reporter June 25, 1980 by grant of hearing by California Supreme Court) (Jan. 5, 1984 Supreme Court docket entry reads "[c]ause retransferred to the Court of Appeal, Third Appellate District, with directions to refile its [April 29, 1980] opinion.... The reporter of dicisions [sic] is directed not to publish that opinion in the Official Reports").

In *Robinson*, a husband and wife, after their arrest, were placed together in a police station interview room. The officers left the room, locked the door behind them, and activated a hidden recording device. The *Robinson* court noted that while "the use 'of an interrogation room (makes it) less likely (to) cause the parties thereto to believe that they were being extended the favor of privacy,' [citations omitted]... there were no visible signs of eavesdropping equipment.... Neither [spouse] was informed of the presence of [such] device." *Id.* at 394. The court concluded that those facts, among others, coupled with the marital communications privilege, "created an expectation of privacy which was unconstitutionally invaded by the warrantless intrusion by eavesdropping." *Id.*

As noted in the above parenthetical, the *Robinson* case was withdrawn from publication. The record does not provide any explanation for such withdrawal, and the Court has been unable to determine why that occurred. The Court does not rely on *Robinson* for the holding in this opinion. (Nevertheless, as this Court noted in

## IV. CONCLUSION

Rodriguez has filed a Motion to Suppress a videotape containing conversations which took place between her and her husband in a police interview room while both parties were under arrest. Rodriguez had a reasonable expectation of privacy in those conversations. For the above-stated reasons, Rodriguez's Motion to Suppress is GRANTED.[35]

IT IS SO ORDERED.

*MCI Telecommunications Corp. v. Wanzer,* Del.Super., C.A. Nos. 89C–MR–216, 89C–SE–26, Poppiti, J., 1990 WL 91100 (June 19, 1990) (Mem.Op.), the fact that a California judicial opinion had been withdrawn from publication would not preclude this Court from "recognizing and considering the court's reasoning [in an opinion nevertheless withdrawn from publication] on an issue of first impression...." *Id.* at 14 n. 2.)

**35.** This videotape evidence will be inadmissible in the State's case-in-chief against Rodriguez. (The Court notes that resolution of Rodriguez' motion for severance has been deferred pending a decision on the instant motion to suppress.) No ruling is now made as to whether this videotape might be admissible for impeachment against Rodriguez or for some other possible valid purpose.